# TWIN CITY PIPE LINE CO. ET AL. *v.* HARDING GLASS CO.

No. 330. Argued March 17, 18, 1931.—Decided May 4, 1931.

*Mr. Harry P. Daily,* with whom *Mr. John P. Woods* was on the brief, for petitioners.

*Messrs. Joseph R. Brown* and *James B. McDonough* for respondent.

Mr. JUSTICE BUTLER delivered the opinion of the Court.

The Twin City Pipe Line Company is a public utility. The Industrial Oil & Gas Company is a producer of natural gas in Arkansas. The majority of the stock of these companies is owned by the same shareholders. The respondent operates a large glass factory at Fort Smith. The pipe line company takes all the gas produced by the oil company, transports it by pipe line from the fields to Fort Smith and there furnishes it at prices fixed by public authority to industrial consumers and to another utility, the Fort Smith Light & Traction Company, which distributes it to domestic and commercial consumers.

Three suits, in which all the above-named companies and one Hale were parties, were commenced in the latter part of 1925. Two were brought by the pipe line company to recover for gas furnished to the glass company. The other was a suit in equity in which the glass company was plaintiff and the other companies and Hale were defendants. At that time gas for the operation of the glass plant was being furnished from a main of the pipe line company laid in a street on which the site of the plant abuts. The plant was the largest consumer of gas in Fort

Smith and required a dependable supply of from a million to a million and a half cubic feet per day. In its complaint the glass company alleged that the petitioners discriminated against it and failed to furnish an adequate supply; it asserted that the pipe line company was bound to construct a line about half a mile in length to connect a main, used to deliver gas to the traction company, with the glass plant and to drill additional gas wells to provide an adequate supply. The traction company objected to the proposed connection on the ground that the pressure and supply of gas available for the service of its customers thereby would be impaired. The suits were consolidated and tried July 26, 1926, the court entered its decree denying the glass company the relief sought in its suit, giving to the pipe line company judgment against the glass company for $17,155.46, to the latter judgment over against Hale and to him judgment over against the oil company for the same amount. The glass company and the oil company appealed.

By written instrument dated August 30, 1926, the parties settled all matters involved in the litigation. It was agreed that all judgments be satisfied and canceled, that all existing contracts between the parties be abrogated and that the appeals and suits be dismissed. The pipe line company agreed to build the additional line for the service of the glass company. The latter agreed to take all its requirements of gas so long as the pipe line company could adequately supply them and to pay the rates then in effect or thereafter fixed by public authority. The glass company agreed that in the event of a shortage of gas so that there was not enough adequately to supply domestic consumers the pipe line company might discontinue serving the glass company upon condition that the same character of service be given to it that was given to other industries.

All the agreements, save that of the glass company to continue to take its requirements of gas from the pipe line company, have been fully performed. The cost of the additional line constructed to serve the glass plant was $4,489.92. The oil company brought in seven wells while the suits were pending and twelve more after the contract was made. The gas from these was made available to the pipe line company for the service of its customers including the glass company. The latter took gas as agreed until January 2, 1929. About that time a company controlled by it completed a pipe line from gas fields to the glass plant. The glass company asserted that the contract was invalid because contrary to public policy and began to take practically all the gas it needed from its own subsidiary.

Petitioners brought this suit to enjoin the glass company from taking gas from anyone other than the pipe line company and to require it specifically to perform the contract. The district court entered its decree granting the relief prayed. The Circuit Court of Appeals reversed and remanded the case with directions to dismiss the bill. 39 F. (2d) 408.

The question is whether the contract is unenforceable because contrary to public policy of Arkansas.

The general rule is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts. *Printing Company* v. *Sampson*, L. R. 19 Eq. 462, 465. *Baltimore & Ohio Southwestern Ry.* v. *Voigt*, 176 U. S. 498, 505. The meaning of the phrase "public policy" is vague and variable; courts have not defined it and there is no fixed rule by which to determine what contracts are repugnant to it. The principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which that

doctrine rests. It is only because of the dominant public interest that one who, like respondent, has had the benefit of performance by the other party will be permitted to avoid his own promise. *Steele* v. *Drummond,* 275 U. S. 199, 205. *B. & W. Taxi. Co.* v. *B. & Y. Taxi. Co.,* 276 U. S. 518, 528. *Holman* v. *Johnson,* 1 Cowp. 341, 343.

In determining whether the contract here in question contravenes the public policy of Arkansas, the constitution, laws and judicial decisions of that State and as well the applicable principles of the common law are to be considered. Primarily it is for the lawmakers to determine the public policy of the State. *Kellogg* v. *Larkin,* 3 Pin. (Wis.) 123, 136. *Buck* v. *Walter,* 115 Minn. 239, 244; 132 N. W. 205. *McNamara* v. *Gargett,* 68 Mich. 454, 460–461; 36 N. W. 218. *People ex rel. Peabody* v. *Chicago Gas Trust Co.,* 130 Ill. 268, 294; 22 N. E. 798. The constitution of Arkansas (Art II, § 19) declares: " Perpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed . . ." This provision is a restraint upon the state legislature. *Cap. F. Bourland Ice Co.* v. *Franklin Utilities Co.,* 180 Ark. 770; 22 S. W. (2d) 993. No question of perpetuity is presented. And it is not shown that this contract was made as a part of a plan to create a monopoly or restrain trade or that it infringes any statute or regulation made under the authority of the State. Cf. §§ 7368, 7373, Crawford & Moses Digest.

We need not pause to determine whether the pipe line company was bound by franchise, statute or regulation to construct the additional pipe line demanded by the glass company for the service of its plant. The court decided against the glass company's claim. The settlement of that matter and the others in controversy constituted adequate consideration for the agreement to take and pay for the gas in question. *Mississippi River Logging Co.* v. *Robson,* 69 Fed. 773. It may not be held

invalid in the absence of a clear showing that some definite public detriment will probably result from its performance. *Steele* v. *Drummond, supra,* 205. *B. & W. Taxi. Co.* v. *B. & Y. Taxi. Co., supra,* 528. *Kellogg* v. *Larkin, supra,* 136.

The contract was not arbitrarily or unfairly imposed upon the glass company. It secured the exceptional means of service which the court held the pipe line company was not bound to furnish. The contract left the glass company free to obtain its supply elsewhere unless the pipe line company's service was adequate and bound the latter to rates—presumably just—fixed by public authority. Public utilities may enter into reasonable arrangements with their customers when warranted by special circumstances. *Warmack* v. *Major Stave Co.,* 132 Ark. 173, 178; 200 S. W. 799. *Hartford Ins. Co.* v. *Chicago, M. & St. P. Ry. Co.,* 175 U. S. 91, 99. *Mann* v. *Pere Marquette R. Co.,* 135 Mich. 210, 218; 97 N. W. 721. It is not suggested that, when there is taken into account the gas made available by the wells brought in after the glass company's suit was commenced, the performance of the contract by the pipe line company leaves it without sufficient gas adequately to supply its other customers or interferes with the proper discharge of any of its duties as a public utility. The contract does not subject the glass company to, or tend in any manner to impose upon the public, any wrong, disadvantage or evil attributable to monopoly or restraint of trade.

The glass company has failed to show that the contract has any tendency to injure the public, and no reason appears why it should not be enforced according to its terms. The decision of the district court is in principle strongly supported by the supreme court of Arkansas in *Ft. Smith Light & Traction Co.* v. *Kelley,* 94 Ark. 461; 127 S. W. 975. And see *Kimbro* v. *Wells,* 112 Ark. 126, 130; 165

S. W. 645. *Warmack* v. *Major Stave Co., supra.* *Griffin* v. *Oklahoma Natural Gas Corp.*, 37 F. (2d) 545.

*Decree reversed.*