**PRECISION RUBBER PRODUCTS CORP., Plaintiff–Appellee,**

v.

**GEORGE McCARTHY, INC., Defendant–Appellant.**

No. 87–5128.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 22, 1988.

Decided April 14, 1989.

Rehearing Denied May 25, 1989.

See also, D.C., 605 F.Supp. 473.

Craig L. John (argued), Dykema, Gossett, Spencer, Goodnow and Trigg, Bloomfield Hills, Mich., Kathleen M. Lewis, Detroit, Mich., Aubrey B. Harwell, Jr., Nashville, Tenn., for defendant-appellant.

H. Lee Barfield, II, Bass, Berry and Sims, Nashville, Tenn., Frank C. Gorrell (argued), Russell F. Morris, Jr., for plaintiff-appellee.

Before KRUPANSKY and WELLFORD, Circuit Judges, and GILMORE, District Judge.*

KRUPANSKY, Circuit Judge.

Defendant-appellant George McCarthy (McCarthy) was a manufacturer's representative for plaintiff-appellee Precision Rubber Products Corporation (Precision). McCarthy solicited business for Precision from various automobile manufacturers, including General Motors, Ford, Chrysler, and Volvo. Customer offers to purchase were placed in the form of customer purchase orders which were delivered to Precision. Each customer offered to purchase the seller's product, pursuant to terms and conditions which it incorporated into its individual purchase order, wherein the purchaser agreed to buy from the seller a fixed percentage of its requirement for a given period of time, usually the production model year, at a specified unit price upon the acceptance of the terms and conditions of the offer, as proposed in the purchase order. Precision issued its acceptance in the form of an "acknowledgement" which it returned to the customer.

Interpretation of the termination clause of the employment agreement between Precision and McCarthy is the issue in controversy confronting this appellate review. The clause in question reads as follows:

---

* Hon. Horace W. Gilmore, United States District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

If this Agreement is terminated by the Manufacturer, the Representative shall receive full commissions at the rate stated on Pages 1 and 2 of this Agreement on all orders from the territory accepted within sixty (60) days following the effective date of termination and shipped by the Manufacturer within one (1) year subsequent to date of termination.

Key to a disposition is a definition of the phrase "all orders . . . accepted within sixty (60) days." McCarthy posits that his commissions attached to the total sales designated in all customer purchase orders received and acknowledged by Precision within 60 days immediately following his termination date if those products were shipped within one year subsequent to his termination date. McCarthy argues that the dates upon which the shipping schedules were released to Precision were of no consequence because a contract between the customer and Precision had been consummated upon the delivery of an acceptance in the form of Precision's "acknowledgement" of the customer's purchase order which fixed the quantity, unit price as well as the delivery parameters of the agreement as directed by subsequently issued shipping schedules furnished by the buyer. In summary, McCarthy claims commissions on all merchandise shipped within one year of his termination date if the purchase order against which the merchandise was shipped was acknowledged, i.e., accepted by the seller (Precision), within sixty days of his termination date.

By contrast, Precision asserts that McCarthy was entitled to commissions only on merchandise that the customer had specifically "released" for shipment, *and* which Precision had shipped within one year after his termination. Stated differently, Precision was liable for commissions only if both the underlying agreement between it and its customer (i.e., the purchase order and the acknowledgement), and the release (i.e., the shipping directions) had been executed within 60 days of McCarthy's termination date. In short, Precision would attach no contractual significance to the initial purchase order issued by a buyer and Precision's acknowledgement, opting instead to argue that no enforceable contract existed between Precision and its buyers until it received a shipping order. This position was advanced by Precision and accepted by the trial court under the anomalous theory that the seller was not required to purchase materials or manufacture the products until it received each shipping schedule. This conclusion ignores elementary contract law principles of offer and acceptance, which state that a contract may be formed even before the specific details of the time, place, and quantity of delivery are fixed. *See e.g. Butler v. Attwood*, 369 F.2d 811 (6th Cir.1966) (enforcement of contract will rarely be denied because of indefiniteness or missing details). "A promise to buy of another person or company all or some of the commodity or service that the promissor may thereafter need or require in his business is not an illusory promise and such a promise is a sufficient consideration for a return promise." Corbin, 1A *Corbin on Contracts* § 156 (1963). *See also Twin City Pipeline Co. v. Harding Glass Co.*, 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112 (1931) (enforcing glass company's contract to take all gas required from pipe line company); *Laclede Gas Co. v. Amoco Oil Co.*, 522 F.2d 33, 38 (8th Cir.1975) (under common law, requirements contracts are routinely enforced where needs of purchasers are reasonably foreseeable).

Inextricably interlocked into and preliminary to an interpretation of the termination clause of McCarthy's employment contract is the resolution of the threshold contractual issue posed by the spectrum of individual purchase orders utilized by Precision's various customers and the form of Precision's acknowledgements of those orders, which documentation will reflect upon and identify the point in time when an enforceable contract was consummated between Precision and each of its respective customers. Once having determined the crucial consummation date of an enforceable contract between Precision and each of its customers that date is interpolated into the termination clause of McCarthy's employment contract to determine the commissions pay-

able to him. Accordingly, he would be entitled to commissions on all merchandise shipped within one year of his termination date if the merchandise was shipped pursuant to an enforceable contract between Precision and its various customers which had been consummated within sixty days of the last day of McCarthy's employment.

Without considering on an ad hoc basis the terms of each purchase order Precision received from its various customers and Precision's acknowledgement and acceptance of each purchase order, the trial court disposed of all diverse customer proposals by uniformly applying the pronouncements of *Robich v. Patent Button Co. of Tenn., Inc.*, 417 F.2d 890 (6th Cir.1969). It found the instant case to be "factually similar" to *Patent Button* and the language of the termination clause to be "virtually identical to that language at issue in *Patent Button*." This court agrees with the trial court's interpretation of *Patent Button* to the extent that it concluded, as this circuit directed in *Patent Button*, that the language of the termination clause in the case as in the instant case was "plain and unambiguous."

Preliminary to interpreting the termination clause of McCarthy's employment contract with his employer Precision was an understanding of the respective agreements that existed between Precision and each of its customers in order to enable the court to determine the date upon which each such contract, if any existed, was consummated between the respective parties because the consummation date afforded the key to interpolating McCarthy's entitlement to commissions.

Although *Patent Button* is instructive, it is not necessarily dispositive of all of the various and diverse contractual relationships that resulted from Precision's negotiations with its individual customers because, unlike *Patent Button*, each of the agreements between Precision and its respective customers varied in form and substance.

In *Patent Button*, the court limited its inquiry to the construction of the following pertinent language which had been incorporated into the purchase orders there in controversy to determine the critical date upon which an enforceable contract was consummated between Patent Button Co. of Tenn., Inc. and its customer:

> Purchaser is not committed to purchase and the Seller is not committed to sell any goods specified in this [purchase] order except for the quantity that may be *specified in an arrival* schedule issued hereunder by Purchaser and accepted by Seller.

Accordingly, the court correctly concluded that Patent Button's acceptance was evidenced by the customer's "shipping schedule" and not Patent Button's, initial acknowledgement of the purchase order.

The trial court in the instant case, however, erroneously failed to recognize that, although the termination clauses of the sales representatives in *Patent Button* and the instant case were "virtually identical" and "unambiguous," the enforceable contractual relationships between Precision and its individual customers varied in terms and conditions as reflected by the disparity of each customer's offer to purchase and Precision's respective acceptance through acknowledgement. Moreover, many of the existing agreements between Precision and its various customers and the various consummation dates reflected therein materially differed from the uniform *Patent Button* language that identified the consummation date of the contract between Patent Button and its customer from which date commission payments accrued to Robich, its sales representative.

The disparities in defining the form and manner of Precision's acceptance of any given customer offer to purchase, which fixed the consummation date of the agreement between the parties, from which date commissions could accrue to McCarthy are disclosed, in each instance, by an examination of the pertinent documentation and, where necessary, any extrinsic evidence which may reflect upon the intent and understanding of the parties to each negotiation.

The differences between the contractual relationships between Precision and each of

its customers are apparent from the General Motors' (GM) offer to purchase wherein it agreed to buy from Precision a fixed percentage of its total requirement within a given period of time, usually the production model year at a specified unit price upon the terms and conditions of its purchase order which Precision accepted in the form of an "acknowledgement" which it returned to General Motors. Timothy Bertrum (Bertrum) a buyer for GM testified that purchase orders became binding commitments upon the issuance and delivery of Precision's acknowledgement and that subsequently issued shipping schedules were directory and merely advised the seller of the percentage of the total order to be shipped to a given place for delivery on a specified date. In contrast, Huron Products Corporation presented its offer in a letter referring to a list of "1985 O-rings which are scheduled to be purchased." Ford's purchase order incorporated a provision that "performance of work under this purchase order may be terminated by the buyer at its option in whole or in part," whereupon Precision was to "immediately terminate all work under the purchase order." Volvo's "blanket order agreement" conditioned that "the actual commitment against this blanket order will be made by means of a 'delivery schedule' to be issued four times a year or more frequently at buyer's option" and "calls on the delivery schedule further ahead than the rolling 'fixed time' are not a commitment, but are to be construed solely as a forecast." The reverse side of the Volvo purchase order stated that "unless otherwise provided herein, the commencement of any work by seller shall constitute acceptance by seller of this purchase order and all its terms and conditions." Obvious from the foregoing, the terms and conditions of each individual offer and acceptance were different and the trial court erred in not considering the contractual relationship that existed between Precision and each of its customers to determine the date upon which an enforceable contract arose between them thereby permitting the trial court to interpret the termination clause of McCarthy's employment contract.

Accordingly, the judgment of the trial court is REVERSED and the case is REMANDED for further consideration and decision not inconsistent with this opinion.