STATE of Tennessee, Plaintiff-Appellee,

v.

Robert G. HEATH, et al., Defendants,

and

Tennessee State Bank,
Defendant-Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Nov. 9, 1990.

Permission to Appeal Denied by Supreme Court March 11, 1991.

Richard T. Wallace, Ogle & Wallace, P.C., Sevierville, for defendant-appellant.

Charles W. Burson, Atty. Gen. and Reporter, and Barry Turner, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

The principal issue on appeal is whether Tennessee State Bank, by foreclosing on condominiums where time-share units had been sold, can extinguish the statutory protection not contained in the deed of trust afforded by Tenn.Code Ann. § 66–32–128 to the non-defaulting time-share purchasers.[1]

On October 22, 1987 the state's attorney general initiated this action against Robert Heath, the Heath Corporation, Tennessee State Bank and others for violations of the Tennessee Time–Share Act of 1981, Tenn. Code Ann. § 66–32–101 *et seq.*, and the Tennessee Consumer Protection Act of 1977, Tenn.Code Ann. § 47–18–101 *et seq.*, in the development, financing and sale of time-shares at the Pinecrest development in Sevier County. The trial court enjoined foreclosure on Units 55 and 57 pending trial to prevent the non-defaulting purchasers' rights from being extinguished. In a pre-trial order the court narrowed the issue as to Tennessee State Bank as to the propriety of its financing on Units 55 and 57. The trial court concluded Tennessee State Bank had actual and constructive knowledge that the time-shares were sold at Pinecrest and that Pinecrest was subject to the Time–Share Act; that Tennessee State Bank's participation in Pinecrest financing made it subject to the Act and failure to include provisions to protect non-defaulting purchasers for the time-share weeks meant the deed of trust violated the Act but the court concluded Tennessee State Bank did

---

1. T.C.A., § 66–32–128. *Protection of nondefaulting purchasers.*—The developer whose project is subject to an underlying blanket lien or encumbrance shall protect nondefaulting purchasers from foreclosure by the lienholder by obtaining from the lienholder a nondisturbance clause, subordination agreement or partial release of the lien as the time-share intervals are sold. In the alternative, the developer may obtain the agreement of the lienholder to take the project, in the event of default by the developer, subject to the rights of the nondefaulting purchasers by posting a bond, equal to fifty percent (50%) of the amount owed to the lienholder, making an assignment of receivables equal to one hundred twenty-five percent (125%) of the principal amounts due to the lienholder, pledging collateral security equal to one hundred percent (100%) of the amount owed to the lienholder or entering into any other financing plan or escrow agreement acceptable to the lienholder.

not violate the Tennessee Consumer Protection Act.

The remedy fashioned by the trial court did not forbid foreclosure but permanently enjoined the bank from foreclosing on Units 55 and 57 unless the sale specifically recognizes and accepts the rights of all non-defaulting purchasers of time-shares in those units.

On appeal, the bank first challenges the attorney general's standing to bring this action and argues the attorney general's only basis for standing is that expressly granted by the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47-18-114. The bank reasons when the chancellor found the consumer protection claim was without merit, the attorney general lost standing to maintain the action.

■ This argument misconstrues the powers of the office of the attorney general and the nature of standing. The state attorney general has all common law powers of office, except insofar as they are restricted by statute and the attorney general's duties are so numerous that the legislature does not attempt to identify each by statute. As the chief law enforcement officer of the state, the attorney general may exercise such authority as the public interest may require and may file suits necessary for the enforcement of state laws and public protection. *See* 7 Am. Jur.2d *Attorney General* § 9 (1980). Tenn.Code Ann. § 8-6-109(b)(1), which describes the attorney general's duty to try cases, has similarly been held by the Supreme Court to be very broad in its language and intent. *State ex rel. Inman v. Brock*, 622 S.W.2d 36 (Tenn.1981), *cert. denied* 454 U.S. 941, 102 S.Ct. 477, 70 L.Ed.2d 249 (1981). Moreover, the attorney general may participate in litigation of a private character where it bears on the interest of the general public. 7 Am.Jur.2d *Attorney General* § 15. A breach of a public right or duty is essential to the right of the attorney general to sue, *id.* at § 14, but there need be no pecuniary interest, because the attorney general's obligation is to promote the public's interest. "[T]o prevent the wrongdoing of one resulting in injury to the general welfare is often of itself sufficient to give it standing in court." *Id.*

Traditionally, the attorney general has had very broad discretion to decide what matters are of public interest and require its attention. *Id.* at § 16. Our Supreme Court has adopted this approach:

A broad discretion is vested in this officer in determining what matters may, or may not, be of interest to the people generally. We must recognize the fact that the office of Attorney General is ancient in its origin in history, and it is generally held by the states of the Union that the Attorney General has a wide range of powers at common law. These are in addition to his statutory powers.

622 S.W.2d at 41.

■ The misconstruction of the standing concept is implicit in the bank's argument where the bank says that once the attorney general lost on the merits of the consumer protection claim, it lost standing in the entire suit. This confuses the right to bring a suit with the ability to prevail on the merits. Where the attorney general is clothed with authority to bring an action under the Consumer Protection Act and the Time-Share Act, standing is not dependent on the outcome of the claims.

■ We conclude participation in this action by the attorney general was well within the attorney general's discretion. The underlying financing on Units 55 and 57 contained no protection for non-defaulting purchasers despite the legislature's very clear intent that protection should have been afforded. This omission could cause many consumers to lose money invested in the time-shares. The attorney general's standing under the Tennessee Consumer Protection Act arises from Tenn.Code Ann. § 47-18-114 and on the Time-Share Act claim under its broad statutory and common law powers.

The evidence does not preponderate against the findings of fact made by the chancellor as to this transaction. T.R.A.P., Rule 13(d). On these findings the chancellor ordered:

That the deeds of trust held by the defendant, Tennessee State Bank, on Units 55 and 57 of the Pinecrest Townhomes Development, not containing provisions for the protection of nondefaulting purchasers or otherwise providing such protection, are violative of the stated statutory provisions and the vested rights of such nondefaulting purchasers. Therefore, an injunction will issue prohibiting the Defendant, its agents, successors or assigns, from foreclosing on such Deeds of Trust unless such foreclosure sale shall specifically recognize and except therefrom the rights of all nondefaulting purchasers of time share interests so held in the affected lands.

█ We affirm the chancellor. The familiar rule that contracts are equitably construed is applicable here. The bank's knowledgeable failure to include protections for non-defaulting purchasers, as required by the statute, renders the foreclosure provisions in its agreement with Heath and the Heath Corporation unenforceable as to the purchasers of the time shares.

█ Two specific provisions of the Act apply to the bank. First, as a lienholder and then as a transferee of the Heath interest after foreclosure. Tenn.Code Ann. § 66–32–128 and Tenn.Code Ann. § 66–32–127.[2] These provisions of the Act are to protect a consumer from what actually transpired in this case, *i.e.*, foreclosure by lender that extinguishes the rights of the non-defaulting purchaser. While the statute does not forbid foreclosure, it requires any foreclosure to take into account the purchasers of time-shares' interest.

█ While the bank knew at the time the loan was made that Pinecrest was subject to the Time–Share Act, the bank argues that despite its prior course of dealings on Unit 21 and despite its knowledge about the Time–Share Act, it should be allowed to extinguish the rights of the purchasers because the statute places the onus on the developer not the lender. The bank's argument is contrary to the statutory language, its purpose and the law of contracts.

Section 128 of the statute requires that the agreement between the developer and lender protect non-defaulting purchasers. Section 127 states that any third party to whom the developer's interest is transferred shall be subject to the developer's obligation even if, *arguendo*, the bank was not required to comply with section 128 when the agreement was made, the bank as transferee would assume the obligations of compliance once the developer defaulted.

█ The overriding purpose of the Time–Share Act is to protect consumers. Regulatory, civil and criminal remedies are provided. To hold that a civil remedy against a lender is inapplicable would defeat the legislative intent. Ordinarily, a developer defaults on a note because it has no money to pay its obligation. To conclude that the legislature intended to limit the consumer's civil remedies to an action for damages against the developer under Section 128 would be a meaningless gesture.

█ Finally, to the extent that the trust deed does not comply with the provisions of the Time–Share Act renders the contract unenforceable without compliance since it is violative of public policy. *Restatement of Contracts* § 178 says:

§ 178. *When a Term is Unenforceable on Grounds of Public Policy.*

(1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

(2) In weighing the interest in the enforcement of a term, account is taken of

(a) the parties' justified expectations,

---

**2.** T.C.A. § 66–32–127. *Financing of time-share programs.*—(a) in the financing of a time-share program, the developer shall retain financial records of the schedule of payments required to be made and the payments made to any person or entity which is the owner of an underlying blanket mortgage, deed of trust, contract of sale or other lien or encumbrance ("lienhold").

(b) Any transfer of the developer's interest in the time-share program to any third person shall be subject to the obligations of the developer.

(b) any forfeiture that would result if enforcement were denied, and

(c) any special public interest in the enforcement of the particular term.

(3) In weighing a public policy against enforcement of a term, account is taken of

(a) the strength of that policy as manifested by legislation or judicial decisions,

(b) the likelihood that a refusal to enforce the term will further that policy,

(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and

(d) the directness of the connection between that misconduct and the term.

In *Holt v. Holt*, 751 S.W.2d 426, 428 (Tenn.App.1988), this court discussed when a private contract may violate public policy: "Public policy is practically synonymous with public good." *Lazenby v. Universal Underwriters Insurance Company*, 214 Tenn. 639, 648, 383 S.W.2d 1, 5 (1964). Unless a private contract is in terms of such a character as to tend to harm or injure the public good, public interest, or public welfare, or *to violate* the Constitution, laws, common *or statutory*, or judicial *decisions of the state*, it does not violate public policy. *Home Beneficial Association v. White*, 180 Tenn. 585, 588–9, 177 S.W.2d 545, 546 (1944). A contract may not be held invalid as against public policy *unless some public detriment will probably result. Twin City Pipeline Co. v. Harding Glass Co.*, 283 U.S. 353, 358, 51 S.Ct. 476, 478, 75 L.Ed. 1112 (1931), or unless the *object of the contract has a tendency to injure the public. Nashville Ry. and Light Co. v. Lawson*, [17 Thompson] 144 Tenn. 78, 87, 229 S.W. 741, 743 (1921). [Emphasis added.]

*Blossom Farm Products Co. v. Kasson Cheese Co.*, 133 Wis.2d 386, 395 N.W.2d 619 (App.1986), *review denied* 134 Wis.2d 458, 401 N.W.2d 10 (1987), provides a helpful insight of when an otherwise legal contract may be unenforceable as against public policy because one party is aware of another's violation of a regulatory scheme designed to protect the public. Kasson is a cheese manufacturer that uses isokappacase, sold by Blossom, in its operations. Isokappacase has many uses, including use as a yield enhancer. If it is used to increase cheese yield, the resulting product must be labeled as imitation or analog cheese. Blossom knew that Kasson was making imitation cheese by using isokappacase as a yield enhancer—a legal act—but was labeling the product as real cheese. When Kasson failed to pay its account to Blossom and Blossom sued, the trial court concluded that Blossom's knowledge of Kasson's noncompliance with the labeling statute rendered the contract unenforceable. Citing the Restatement, the appeals court agreed that Blossom could not recover because of its knowledgeable involvement in Kasson's deception of the public.

The courts in this jurisdiction have recognized many instances where failure to comply with a statutory requirement will render a contract unenforceable. *See Lambert v. Home Federal Savings & Loan*, 481 S.W.2d 770 (Tenn.1972); *Watterson v. Nashville*, 106 Tenn. 410, 61 S.W. 782 (1901); *McDaniel v. McCall*, 655 S.W.2d 155 (Tenn.App.1983); *Reece v. Homestead Realty*, 626 S.W.2d 711 (Tenn.App.1981).

We affirm the judgment of the chancery court enjoining the bank from proceeding with foreclosure until it provides protection to the time-share purchasers in accordance with the Time–Share Act.

The costs of the appeal are assessed against the appellant.

SANDERS, P.J. (E.S.), and WILLIAM H. INMAN, Special Judge, concur.