[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Introduction
This is an action for a commission allegedly due the Plaintiff, Re/Max Bell Park Realty, Inc., from the Defendant pursuant to an exclusive listing contract for the sale of real estate. The Plaintiff claims one-half of a commission emanating from the sale of the property. The Defendant, pro se, denied the allegations of the complaint and claimed, by way of special defense, that the listing was invalid and illegal.
Trial of this matter was held on October 24, 2002.
Findings of Facts
The Defendant is a builder and has been for over twenty-five years. In the last year alone, he has paid over $50,000 in real estate commissions. In 1998 Robin Larkin, a realtor with Re/Max Bell Park Realty, discussed with him a house he was going to build on Searles Road in Pomfret. Larkin had sold a number of properties for the Defendant in the past. On September 22, 1998, the Defendant signed a exclusive listing contract with the Plaintiff to sell the property for a price of $260,000. The contract provided for a commission of 5% if the Plaintiff procured a customer ready, willing and able to purchase the property during the contract period. The contract covered the period form September 22, 1998 to June 22, 1999 and provided that the property would be listed in the multi-listing service of Southeasten Connecticut Realtors Information Service. Therefore a procuring agent would include other MLS member agents. During the term of the contract Larkin advertised the property and submitted at least one offer by a prospective purchaser to the Defendant.
Some time subsequent to execution of the contract the Defendant advised Larkin that another agent had a buyer and that she should contact her. Larkin was never able to establish contact with the other agent. On June CT Page 1280 17, 1999, the Defendant sold the house to Stephen Hunter for $259,000. Hunter was introduced to the property by Cici Cole, an agent for Dewolfe/T.R. Preston. Larkin was not aware of the closing. At the closing a commission of $6,475 was paid to Dewolfe/T.R. Preston and a commission to Bell Park Realty was listed as paid "p.o.c." which means "paid outside of closing." Some time in June 1999 the Defendant's attorney drafted an agreement which was signed by representatives of Dewolfe/T.R. Preston and Re/Max Bell Park Realty in which they agreed that there is a 5% commission due with respect to the sale of the property on Searles Road, Pomfret, to Hunter, and that the total sum of the commission, $12,950, should be spilt evenly between them. However, no payment to Bell Park Realty was ever made.
Discussion
The Defendant claims that the listing contract is illegal because the lot was part of a subdivision which was not approved at the time the listing agreement was entered into. The town of Pomfret Planning Regulations provide that: "No person or entity shall make a subdivision of land, or sell or offer for sale lots from a subdivision, until a plan for such subdivision has been approved by the Commission and has been filed or recorded by the Town Clerk." The subdivision was approved on May 25, 1999, during the contract period, and Hunter signed an agreement to buy the property that day.
"During the life of an exclusive sale contract, an agreement between the owner and the ultimate purchaser to sell and buy, whether or not specifically enforceable, gives rise to a cause of action on the part of an exclusive broker who uses reasonable efforts to sell the property" and "if an owner, during the life of an exclusive sale contract, sells the subject property, the exclusive broker is entitled to his commission."Covino v. Pfeffer, 160 Conn. 212, 215-217 (1970) (citation omitted). Here there is no dispute that the property was sold during the period of the Defendant's contract with the Plaintiff. Therefore, pursuant to the contract, the Plaintiff is entitled to a share of the commission.
The Plaintiff claims, however, that the agreement is illegal and invalid because it violated the Planning Regulations of the town of Pomfret. As the court stated in Collins v. Sears, Roebuck Co.,164 Conn. 369, 377 (1973): "The principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the "general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.' Twin City Pipe Lines
CT Page 1281Co. v. Harding Glass Co., 283 U.S. 353, 356, 357, 51 S.Ct. 476, 477,75 L.Ed. 1112; 17 Am.Jur.2d, Contracts, § 174. The impropriety injurious to the interests of society which will relieve a party from the obligation he has assumed must be clear and certain before the contract will be found void and unenforceable. Thacher Hotel, Inc. v. Economos,160 Me. 22, 26, 197 A.2d 59; 5 Williston, Contracts, § 1629A (Rev.Ed.); 17 Am.Jur.2d, Contracts § 178. An unfounded anticipation that a provision in a lease may lead to fraudulent conduct by one of the parties, which might happen in any contract case, is an insufficient basis on which to ground a conclusion that an agreement is contrary to public policy. The defendant has failed to show that the lease in question tends to impose any wrong, disadvantage or injury on the public or that it is prejudicial to the public good or in violation of established public policy."
Here no contract for the sale of the property was entered into until after the subdivision was approved and it was not until then that the commission became due pursuant to the contract. Therefore, although the offering of the sale of the house prior to the approval of the subdivision may have been a violation of the Pomfret Planning Regulations, such a violation does not raise to the level that "it tends to impose any wrong, disadvantage or injury on the public or that it is prejudicial to the public good or in violation of established public policy" such as to render the agreement of the parties invalid. Obviously the purpose of the regulation is to protect purchasers from buying land in an unapproved subdivision, but that is not what occurred here. Therefore the Defendant has failed to establish that the contract is invalid.
Conclusion
Judgment shall enter in favor of the Plaintiff. The Defendant shall pay the Plaintiff $6,475 due as commission under the contract. In addition, the contract provides that if the Plaintiff is required to take legal action against the Defendant to enforce the agreement the Defendant agrees to pay reasonable attorney's fees and court costs. Therefore the Defendant is also ordered to pay the Plaintiff $2,497.50 in attorneys fees plus costs.
___________________ J. JANE S. SCHOLL, JUDGE CT Page 1282