MARKMAN, J.
(concurring). In this straightforward contract case, one that ought to be the subject of consensus on this Court, the majority needlessly introduces uncertainty and doubt into the law of our state. By its gratuitous observation that the parties to the contract here are “business entities with equal bargaining power,” ante at 39, the majority suggests that this circumstance is somehow relevant to its conclusion that the contract ought to be read in accordance with its language. Neither of the parties to this contract has raised any argument concerning their respective “bargaining powers.”
After a decade in which this Court has sought to bring a greater consistency and certainty to the law of this state by a disciplined interpretation of statutes, ordinances, deeds, and contracts, and by clear judicial statements concerning the rights and obligations of individuals and businesses, the majority seems bent on restoring a legal regime in which the stability and predictability of the law is perpetually subject to creative legal arguments.
The majority offers no explanation of why it is necessary to remark upon the allegedly “equal bargaining power” of the parties in this case. What, for example, would be different in the majority’s analysis if one of the parties to this dispute had not been a “business entity”? What would be different in this analysis if the parties had not been of “equal bargaining *45 power”? Indeed, what does it mean to be of “equal bargaining power,” and how do we calculate such “equality”? Where does such a requirement of “equality” derive from in the law of this state? Through what means can a party with “unequal” bargaining power ensure that its contract is binding on another party?
While the majority provides no guidance in answering these questions, one can hardly doubt that it will become an increasingly common aspect of the appellate landscape in contract cases in Michigan for one party — generally the party that finds the language of the contract to be inhospitable to its claims — to offer its own answers. And as things tend to go, appellate courts will increasingly come to articulate vague rules, fraught with exceptions and exceptions to exceptions, “totality of circumstances” analyses, and multi-part tests for ascertaining what constitutes “equal bargaining power.” And eventually in place of a rule of law in which the words of contracts are taken seriously, and in which parties to contract disputes can understand their rights and responsibilities, and in which parties may even find it possible to understand these rights and responsibilities without having to avail themselves of a lawyer, the majority will leave in its wake a legacy of more litigation, more appeals, higher legal costs, and a diminished role for private parties, with a concomitantly enhanced role for judges, in resolving contract disputes. But I suppose this is the very point. When our new Chief Justice promises to “undo ... the damage” she asserts has been done by this Court over the past decade, Detroit Free Press, December 10, 2008, at 2A, I would venture that the respect this Court has accorded during this time to competent persons to enter into contracts of their own choosing constitutes one aspect of such “damage.” See also, e.g., Genesee Foods Services, Inc v Meadowbrook, Inc, 483 Mich 907 (2009).
*46 It is well established in Michigan that “ ‘competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.’ ” Terrien v Zwit, 467 Mich 56, 71; 648 NW2d 602 (2002), quoting Twin City Pipe Line Co v Harding Glass Co, 283 US 353, 357; 51 S Ct 476; 75 LEd 1112 (1931); see also Port Huron Ed Ass ’n v Port Huron Area School Dist, 452 Mich 309, 319; 550 NW2d 228 (1996) (discussing the “ ‘fundamental policy of freedom of contract’ ” under which “ ‘parties are generally free to agree to whatever specific rules they like’ ”). Rather than merely reiterating this law and resolving the instant controversy, the majority introduces a new murkiness into a realm of law in which clarity and certainty are essential to everyday business relationships. While the present controversy may not seem of great consequence beyond the parties, it is entirely typical of thousands of such contracts freely entered into by individuals and businesses throughout this state each day. And it is essential to the rule of law that these contracts be respected and that this Court provide the leadership and direction to ensure that this takes place. Today’s decision moves in exactly the wrong direction in that regard.
The majority reaches the correct result and applies the correct analysis. It is simply not content to end its opinion where it ought, choosing instead to invite new litigation by eroding clear-cut principles of contract law.[1]1 would affirm, but without the majority’s unsettling language concerning the “equal bargaining power” of the parties.
*47 Corrigan and Young, JJ., concurred with Markman, J.

 By its equally gratuitous references to the absence of “ambiguous” language in this contract, and the absence of “compelling public policy” that “would require that we negate the parties’ contract,” ante at 39, the majority also, I fear, foreshadows future approaches by which traditional rules of freedom of contract can be disregarded where a contract is viewed disapprovingly by a majority of this Court. See generally Klapp v United *47 Ins Group Agency, Inc, 468 Mich 459; 663 NW2d 447 (2003); Federated Publications, Inc v City of Lansing, 467 Mich 98; 649 NW2d 383 (2002); Terrien, supra.