*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BURT SMITH,

Plaintiff-Appellant,

v

TOWN AND COUNTRY PROPERTIES II, INC.,

Defendant-Appellee.

FOR PUBLICATION
August 19, 2021
9:05 a.m.

No. 353839
Macomb Circuit Court
LC No. 2020-000337-CZ

Before: CAVANAGH, P.J., MURRAY, C.J., and REDFORD, JJ.

PER CURIAM.

In this action for wrongful discharge in violation of public policy, plaintiff appeals as of right an order granting summary disposition to defendant. Plaintiff argues that the trial court erred by ruling: (1) plaintiff had not created a genuine fact issue as to whether he was an employee, and (2) independent contractors could not bring claims asserting wrongful discharge in violation of public policy. We affirm.

This case arises out of the termination of the employment relationship between defendant and plaintiff, who was an associate real estate broker at defendant's real estate business from 2001 to 2018. Although plaintiff did not reference it in his complaint, on February 2, 2015 the parties entered into an "Independent Contractor Agreement" which stated, among other things, that plaintiff was an independent contractor. Specifically, paragraph A of Article IV, which is titled "Independent Contractor," states: "It is expressly agreed and understood between the parties that the Sales Associate, in performance of his/her services hereunder, is not to be treated or otherwise considered as an employee of Broker." And paragraph D states: "As a consequence of Sale's Associate's independent contractor status, Broker shall not be responsible for any federal, state or local employment taxes for any purpose." Further, paragraph A of Article VIII, which is titled "Termination," states: "In furtherance of the Independent Contractor status of Sales Associate, this Agreement and the relationship created hereby, may be terminated by either party hereto, with or without cause, at any time upon notice given to the other." Consistent with that Agreement, plaintiff's entire compensation was in the form of commissions from the sale of real estate. Defendant provided plaintiff with an office and office equipment, and plaintiff was required to attend mandatory meetings and abide by various policies.

One such policy, according to plaintiff, was that defendant required plaintiff to exclusively use Title One, Inc. for the title policy and closing services on every real estate transaction, regardless of the client's wishes. However, plaintiff averred in his complaint, that this policy violated the Real Estate Settlement Procedures Act (RESPA), 12 USC 2601 *et seq.*, which allows buyers and sellers to choose their settlement service provider. In accordance with the law, plaintiff averred, he "refrained from steering [defendant's] clients to Title One." However, on November 29, 2018, the sales manager and plaintiff's supervisor, John Goings, advised plaintiff through an email that plaintiff would have to get approval from defendant's president, John Kersten, to complete a particular transaction that did not use Title One for the real estate transaction. Plaintiff responded to the email, explaining that he could not demand that clients use a particular settlement service provider exclusively because such a policy violated RESPA.

Thereafter, on December 20, 2018, plaintiff attended a meeting with Goings and Kersten. Plaintiff recorded this meeting without advising Goings or Kersten that he was doing so. Apparently during this meeting, Kersten told plaintiff that he was the broker and bore ultimate responsibility for the transactions and, as such, he preferred that Title One be used because they did good work, kept him informed of any issues, and because he had never heard of any problems arising with Title One. Apparently, plaintiff responded that Title One was more expensive and that the client had the right, under RESPA, to choose the title company. Plaintiff referred to himself as an independent contractor, stating that he was not an employee, and implied that he did not have to defer to Kersten's preferences. Kersten reiterated that he was the broker, as well as the owner of the company, and that plaintiff used defendant's name, brand, and facilities in which to conduct business; thus, regardless of the label, plaintiff "worked for" defendant. Eventually, Kersten grew frustrated with plaintiff "lecturing" him, noted that "this conversation is going nowhere," and ended the meeting. About two hours later, plaintiff was informed by Goings that he was terminated at Kersten's directive.

On January 24, 2020, plaintiff filed this action asserting, in Count I, a claim of retaliatory discharge in violation of public policy premised on his purported refusal—presumably as an employee—to violate RESPA and, in Count II, a claim of retaliatory termination of employment contract in violation of public policy premised on his purported refusal—presumably as an independent contractor—to violate RESPA.

On March 16, 2020, defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's complaint must be dismissed because only an employee may bring wrongful discharge claims and there was no genuine fact issue that plaintiff was not an employee but an independent contractor, as set forth in the parties' Independent Contractor Agreement (which plaintiff failed to mention in his complaint) and as defined by MCL 339.2501(h). In support of the motion, defendant submitted a copy of the parties' Independent Contractor Agreement, as well as an affidavit from defendant's director of finance stating that, from 2015 through 2018, plaintiff was not an employee and was compensated "solely in the form of commissions from the sale of real estate."

Plaintiff responded to defendant's motion, arguing that the motion was premature because discovery was not complete. Further, plaintiff argued, the executed contract was not dispositive as to plaintiff's employment status as either an employee or an independent contractor for purposes of this action. Rather, as set forth in *Nationwide Mut Ins Co v Darden*, 503 US 318, 322-324; 112

S Ct 1344; 117 L Ed 2d 581 (1992) (a case concerning whether one is an "employee" for purposes of ERISA, which "does not helpfully define" that term), the issue is determined by the "control the hiring party has over the manner and means of the worker's work product." And, plaintiff noted, "the labels that the parties use in such a relationship are not dispositive." See *Laster v Henry Ford Health Sys*, 316 Mich App 726, 735-736; 892 NW2d 442 (2016) (a case concerning vicarious liability to a third party). In this case, plaintiff argued, after applying the "control test" to the facts it was evident that plaintiff actually functioned as defendant's employee and was not an independent contractor. For example, plaintiff occupied defendant's office space and used defendant's office supplies and equipment, attended defendant's required meetings, and abided by defendant's mandatory office practices, policies, and procedures. That plaintiff signed a contract, was paid through commissions, and was treated as an independent contractor for tax purposes did not outweigh the other evidence presented by plaintiff that he was treated like an employee. Moreover, plaintiff argued, even if he was considered an independent contractor, plaintiff may still assert a claim of wrongful discharge in violation of public policy because he was terminated for refusing to violate a law, RESPA. Accordingly, plaintiff argued, defendant's motion for summary disposition must be denied. In support of his responsive brief, plaintiff submitted his own affidavit with attached documents supporting his claim that he was defendant's employee rather than an independent contractor. Plaintiff also submitted a thumb drive which allegedly contained a recording of the December 20, 2018 meeting between plaintiff, Goings, and Kersten.

In its reply brief, defendant argued that plaintiff's analysis was directly at odds with and rendered meaningless MCL 339.2501(h)—which specifically defines an independent contractor in the context of the real estate profession—and thus, the argument must be rejected. Plaintiff was an independent contractor as defined by Michigan law, period. And because only employees can assert claims of retaliatory discharge in violation of public policy, this entire matter must be dismissed. Moreover, defendant argued, plaintiff's audio recording was not admissible as *documentary* evidence under MCR 2.116(G), and further, was recorded without the knowledge and consent of Goings and Kersten. But, defendant noted, plaintiff admitted on the recording that he was, indeed, an independent contractor.

On May 18, 2020, a hearing was held on defendant's motion. Defendant argued that there was no genuine fact issue that plaintiff was an independent contractor, and that his claims must fail for that reason. Plaintiff met the statutory definition of an independent contractor in the real estate context, and that should be dispositive. There was no caselaw to support the right of an independent contractor to bring claims such as those alleged by plaintiff. Further discovery would be a waste of time and resources because any documents plaintiff might want to use to dispute his status as an independent contractor—like W-2s—would already be in his possession.

Plaintiff argued that the statutory definition of an independent contractor in the real estate context is not dispositive; rather, it merely sets forth prerequisites that once met allows for the application of the economic realities test or the control test.[1] Under either test, plaintiff would be considered an employee. But once there is an employment relationship, as defined in MCL

---

[1] See, e.g., *Clark v United Techs Auto, Inc*, 459 Mich 681, 687-688; 594 NW2d 447 (1999); *Kidder v Miller-Davis Co*, 455 Mich 25, 31-35; 564 NW2d 872 (1997), for discussion about these tests.

339.2501(g), whether as an employee or an independent contractor, plaintiff argued, that relationship cannot be terminated for reasons that violate public policy. Plaintiff also argued that an independent contractor could bring claims for retaliatory discharge in violation of public policy because such claims are rooted in tort law rather than contract law. Similarly, under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, one can bring a claim regardless of whether he or she is an employee or independent contractor. Plaintiff also noted that it would also be bad public policy to hold that independent contractors could be fired for refusing to violate a law.

In rebuttal, in addition to reiterating its other arguments, defendant argued that the court should ignore plaintiff's arguments based on MCL 339.2501(g) and on his analogy to civil-rights law because they were not supported by appropriate briefing and were first raised during oral argument. After significant discussions between the court and the parties, the court took the matter under advisement.

On May 29, 2020, the trial court issued an opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(10). The court recognized plaintiff's argument that the independent contractor definition in MCL 339.2501(h) was not definitive for purposes of determining whether he had a claim. However, the court reasoned that:

> Plaintiff does not offer any suggestions as to the meaning of the statutory provision if not to define the type of relationship between an associate real estate broker . . . and a real estate broker. Even if the definition is to apply to pay practices, as asserted by Plaintiff, it doesn't necessarily follow that it doesn't also apply to the other aspects of the relationship between the parties.

The trial court further noted it was "undisputed that the provision defining an independent contractor relationship is applicable to the facts of this case and that Plaintiff fits the description of an independent contractor." The court concluded that "Plaintiff has not presented sufficient evidence or argument to create a genuine issue of material fact that he was not an independent contractor of Defendant. Therefore, Count I must be dismissed."

Regarding plaintiff's argument that even if he was an independent contractor he was entitled to bring a public policy claim for wrongful discharge, the court found persuasive the reasoning in *Pedell v Heartland Health Care Ctr*, unpublished per curiam opinion of the Court of Appeals, issued March 20, 2007 (Docket No. 271276), p 7. That case states:

> "*[E]mployment* contracts . . . are presumptively terminable at the will of either party . . . ." Thus, the public policy exception is an exception to the general rule that *employees* are terminable at will. The public policy exception cannot apply to independent contractors, because independent contractors are, by definition, not employees. [*Id.* (citations omitted).]

As such, the court held that plaintiff had "no recourse under public policy," so Count II also had to be dismissed. Accordingly, plaintiff's entire case against defendant was dismissed. This appeal followed.

Plaintiff first argues that MCL 339.2501(h) is not dispositive of whether he was defendant's employee and, because he presented sufficient evidence to establish a genuine issue

of material fact exists on that issue, defendant was not entitled to summary disposition. We disagree.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 173; 858 NW2d 765 (2014) (citation omitted). The pleadings, affidavits, and other documentary evidence is reviewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists for the jury to decide. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

This Court also reviews de novo issues of statutory interpretation. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). Our purpose in reviewing questions of statutory construction is to discern and give effect to the Legislature's intent. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). Our analysis begins by examining the plain language of the statute; if the language is unambiguous, no judicial construction is required or permitted and the statute must be enforced as written. *Id*. (citation omitted).

Article 25 of the Occupational Code, MCL 339.2501 *et seq.*, the real estate brokers act (REBA), contains regulations that govern the real estate profession. MCL 339.2501 provides the following definitions:

(a) "Associate broker" or "associate real estate broker" means an individual who meets the requirements for licensure as a real estate broker under this article and who is licensed as an associate real estate broker under section 2505 to provide real estate brokerage services as an employee or independent contractor of a real estate broker.

* * *

(g) "Employ" or "employment" means the relationship between a real estate broker and an associate real estate broker or a real estate salesperson which may include an independent contractor relationship. The existence of an independent contractor relationship between a real estate broker and an individual licensed to the real estate broker does not relieve the real estate broker of the responsibility to supervise acts of the licensee that are regulated under this article.

(h) "Independent contractor relationship" means a relationship between a real estate broker and an associate real estate broker or real estate salesperson that satisfies both of the following conditions:

(*i*) A written agreement exists in which the real estate broker does not consider the associate real estate broker or real estate salesperson as an employee for federal and state income tax purposes.

(*ii*) At least 75% of the annual compensation paid by the real estate broker to the associate real estate broker or real estate salesperson is from commissions from the sale of real estate.

It is clear that plaintiff's relationship with defendant met the definition of "independent contractor relationship" found at MCL 339.2501(h). The parties entered into an Independent Contractor Agreement which provided, in paragraph A of Article IV, that: "It is expressly agreed and understood between the parties that the Sales Associate, in performance of his/her services hereunder, is not to be treated or otherwise considered as an employee of Broker." And paragraph D states: "As a consequence of Sale's Associate's independent contractor status, Broker shall not be responsible for any federal, state or local employment taxes for any purpose." Further, plaintiff's compensation was in the form of commissions from the sale of real estate.

Defendant and amicus curiae on behalf of Michigan Realtors argue, as the trial court held, this definition of "independent contractor relationship" ends the inquiry into whether plaintiff was an employee or independent contractor. Plaintiff argues that this definition is not dispositive of his employment status as either an employee or independent contractor. But our obligation when construing a statute is to discern the legislative intent that can be reasonably inferred from the words in the statute. *Chandler v Co of Muskegon*, 467 Mich 315, 319; 652 NW2d 224 (2002). And here, MCL 339.2501(a) plainly distinguishes between an associate broker who provides real estate brokerage services as an "employee" of a real estate broker and an associate broker who provides real estate brokerage services as an "independent contractor" of a real estate broker. Plaintiff had an "independent contractor relationship" with defendant as defined by MCL 339.2501(h). Plain and clear statutory language must be enforced as written, *Velez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012), and when a statute defines a term, that definition alone controls, *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). Because plaintiff, an associate broker, entered into an Independent Contractor Agreement with defendant, the employment status of plaintiff was definitive—he was an independent contractor and not an employee. Accordingly, the trial court properly concluded that plaintiff failed to create a genuine issue of material fact on the issue of his employment status as a real estate professional and dismissed Count I of plaintiff's complaint.

Next, plaintiff argues that even if he was an independent contractor he was not prohibited from asserting a claim of wrongful discharge in violation of public policy. We disagree.

In general, Michigan law presumes employment relationships are terminable at the will of either party for any or no reason. *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982); *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). However, there are three recognized public policy exceptions to the at-will employment doctrine and they are based on the principle that the grounds for termination are so contrary to public policy as to be actionable. *Id*. The three recognized exceptions have been explained as follows:

> (1) explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty (e.g., the Civil Rights Act, MCL 37.2701; the Whistleblowers' Protection Act, MCL 15.362; the Persons With Disabilities Civil Rights Act, MCL 37.1602), (2) where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course of employment (e.g., refusal to falsify pollution reports; refusal to give false testimony before a legislative committee; refusal to participate in a price-fixing scheme), and (3) where the reason for the

discharge was the employee's exercise of a right conferred by a well-established legislative enactment (e.g., retaliation for filing workers' compensation claims). [*Id.* at 524, citing *Suchodolski*, 412 Mich at 695-696.]

Clearly, all three recognized exceptions refer to the adverse employment action occurring to an "employee."

In this case, plaintiff argues that the public policy exceptions to the at-will employment doctrine—which have historically only applied to employees—should be extended to apply to independent contractors. And, specifically here, plaintiff seeks a holding that independent contractors can bring claims under the second exception—when they are terminated because they refuse to violate a law. However, public policy exceptions to the at-will employment doctrine are not to be created lightly. As this Court explained in *Landin*, 305 Mich App at 525-526, Michigan courts do not have

unfettered discretion or authority to determine what may constitute sound public policy exceptions to the at-will employment doctrine. As observed in *Terrien v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002):

In defining "public policy," it is clear to us that this term must be more than a different nomenclature for describing the personal preferences of individual judges, for the proper exercise of the judicial power is to determine from objective legal sources what public policy *is*, and not to simply assert what such policy *ought* to be on the basis of the subjective views of individual judges . . . .

In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. See *Twin City Pipe Line Co v Harding Glass Co*, 283 US 353, 357; 51 S Ct 476; 75 L Ed 1112 (1931). The public policy of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. There is no other proper means of ascertaining what constitutes our public policy.

Consistent with this observation, the *Terrien* Court noted that as a general rule, making social policy is a job for the Legislature, not the courts, *id*. at 67; 648 NW2d 602, and found instructive the United States Supreme Court's mandate: " 'Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. As the term "public policy" is vague, there must be found definite indications in the law of the sovereign to justify the invalidation of a contract as contrary to that policy.' " *Id*. at 68, quoting *Muschany v United States*, 324 US 49, 66; 65 S Ct 442; 89 L Ed 744 (1945). Thus, courts may only derive public policy from objective sources.

*Kimmelman*[ *v Heather Downs Mgt Ltd*, 278 Mich App 569, 573; 753 NW2d 265 (2008)].

Notably, the three public policy exceptions recognized in *Suchodolski* entail an employee's exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law. *Id*. These three recognized circumstances remain the only three recognized exceptions and the list of exceptions has not been expanded. While the *Suchodolski* Court's enumeration of public policies that might forbid termination of at-will employees may not have been phrased as if it were an exhaustive list (*id*. at 573; 753 NW2d 265), our courts have yet to find a situation meriting extension beyond the three circumstances detailed in *Suchodolski*. [*Landin*, 305 Mich App at 525-526.]

Although the discussion in *Landin* related to expanding the number of exceptions to the at-will employment doctrine, its reasoning applies with equal force to the decision whether to apply or analogize those exceptions to the independent contractor context. Thus, plaintiff's arguments that essentially amount to urging that it would be "good public policy" to allow independent contractors to bring certain actions for wrongful discharge are not persuasive.

In fact, recognition of the wrongful discharge cause of action has, from the earliest Michigan cases, been clearly tied to employees in the at-will employment context. In one early case, this Court reasoned:

It is apparently true that the employment relationship present in this case was an employment at will. And, while it is generally true that either party may terminate an employment at will for any reason or for no reason, that rule is not absolute. It is too well-settled to require citation that an employer at will may not suddenly terminate the employment of persons because of their sex, race, or religion. Likewise, the better view is that an employer at will is not free to discharge an employee when the reason for the discharge is an intention on the part of the employer to contravene the public policy of this state. [*Sventko v Kroger Co*, 69 Mich App 644, 646-647; 245 NW2d 151 (1976) (footnote omitted).]

In another early case, this Court explained:

This Court has recognized exceptions to the well-established rule that at will employment contracts are terminable at any time for any reason by either party. These exceptions were created to prevent individuals from contravening the public policy of this state.

It is without question that the public policy of this state does not condone attempts to violate its duly enacted laws.

Plaintiff claims that defendants discharged him from their employ when he refused to manipulate and adjust sampling results used for pollution control reports . . . . Such action would clearly violate the law of this state. [*Trombetta v Detroit, Toledo & Ironton R Co*, 81 Mich App 489, 495-496; 265 NW2d 385 (1978) (citations omitted).]

When our Supreme Court endorsed the doctrine, it stated:

> In general, in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason. However, an exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable. [*Suchodolski*, 412 Mich at 694-695 (citation omitted).]

The reasoning of these cases extended only to at-will employment relationships between employees and employers, and not to independent contractors.

Because extending the at-will employment public policy exceptions to independent contractors would clearly be an expansion of the current doctrine, we conclude that more specific indications of the state's desire to protect independent contractors in this context is required. Plaintiff offers relatively little in this regard. In fact, courts in several states have ruled that public policy exceptions to at-will employment doctrines do not protect independent contractors. See, e.g., *Bishop & Assoc, LLC v Ameren Corp*, 520 SW3d 463, 471 (Mo, 2017); *Harvey v Care Initiatives, Inc*, 634 NW2d 681, 683 (Iowa, 2001); *McNeill v Security Benefit Life Ins Co*, 28 F3d 891, 893 (CA 8, 1994); *Cogan v Harford Mem Hos*p, 843 F Supp 1013, 1022 (D Md, 1994). On appeal, plaintiff has not referred us to any persuasive authority that supports the extension of the public policy exceptions to the at-will employment doctrine outside the context of the employer-employee relationship. While it may be sound public policy to extend the public policy exceptions outside the context of the employer-employee relationship and to independent contractors like plaintiff, such a decision should come from the Legislature or the Supreme Court. In our estimation the prevailing legal norms and legal theories governing both independent contractors and the at-will doctrine have not changed since the adoption of the public-policy exception to the at-will doctrine such that the doctrine should be expanded to cover independent contractors. *Price v High Pointe Oil Co Inc*, 493 Mich 238, 242-243; 828 NW2d 660 (2013). Accordingly, we agree with the trial court that plaintiff had "no recourse under public policy" with regard to defendant's termination of their employment relationship.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Christopher M. Murray
/s/ James Robert Redford

-9-