| Payment Number | Payment Date | Assumed End Date | Federal Rate | CIC Payment | Simple Interest | Balance |
|---|---|---|---|---|---|---|
| 1 | 12/31/89 | 09/30/02 | 7.66% | $ 300,000.00 | $ 293,136.66 | $ 593,136.66 |
| 2 | 12/31/90 | 09/30/02 | 7.02% | $ 300,000.00 | $ 247,584.82 | $ 547,584.82 |
| 3 | 12/31/91 | 09/30/02 | 4.41% | $ 300,000.00 | $ 142,304.05 | $ 442,304.05 |
| 4 | 12/31/92 | 09/30/02 | 3.72% | $ 300,000.00 | $ 108,848.22 | $ 408,848.22 |
| 5 | 12/31/93 | 09/30/02 | 3.61% | $ 300,000.00 | $ 94,799.59 | $ 394,799.59 |
| 6 | 12/31/94 | 09/30/02 | 7.22% | $ 300,000.00 | $ 167,939.18 | $ 467,939.18 |
| 7 | 12/31/95 | 09/30/02 | 5.35% | $ 300,000.00 | $ 108,392.47 | $ 408,392.47 |
| 8 | 12/31/96 | 09/30/02 | 5.45% | $ 300,000.00 | $ 94,023.70 | $ 394,023.70 |
| 9 | 12/31/97 | 09/30/02 | 5.47% | $ 300,000.00 | $ 77,930.24 | $ 377,930.24 |
| 10 | 12/31/98 | 09/30/02 | 4.51% | $ 300,000.00 | $ 50,780.52 | $ 350,780.52 |
| | TOTALS | | | $3,000,000.00 | $1,385,739.44 | $4,385,739.44 |

ENTERGY ARKANSAS, INC., an Arkansas corporation; Entergy Gulf States, Inc., a Texas corporation; Entergy Louisiana, Inc., a Louisiana corporation; Wolf Creek Nuclear Operating Corporation, a Delaware corporation, ["Entergy & Wolf Creek"] Plaintiffs,

Central Interstate Low–Level Radioactive·Waste Commission, ["Commission"] Realigned Plaintiff,

US Ecology, Inc., a California corporation, ["USE"] Intervenor–Plaintiff,

v.

State of NEBRASKA; Nebraska Department of Environmental Quality; Nebraska Department of Health and Human Services Regulation & Licensure. ["Nebraska"] Defendants.

No. 4:98CV3411.

United States District Court, D. Nebraska.

Sept. 30, 2002.

Stephen M. Bruckner, Joseph E. Jones, Fraser, Stryker Law Firm, Omaha, NE, for Omaha Power District.

Rene M. Devlin, Laurence H. Levine, Latham, Watkins Law Firm, Chicago, IL, for US Ecology, Inc.

Lynne R. Fritz, Attorney Genral's Office, Lincoln, NE, for Central Interstate Low-Level Radioactive Wast Com'n, Dept. of Environ. Quality, Jay Ringenberg, Randolph Wood, Nebraska Dept. of Health, State of Nebraska, Cherly Rogers, David P. Schor,

Lisa Goldblatt, Michael R. McCarthy, Collier, Shannon Law Firm, Washington, DC, for State of Nebraska.

John P. Heil, Patrick J. Ickes, Thomas E. Johnson, Baird, Holm Law Firm, Oma-
ha, NE, for Entergy Arkansas, Entergy Gulf States, Entergy Louisiana, Wolf Creek Operating.

Patricia A. Knapp, University of Nebraska-College of LAw, Lincoln, NE, for Boyd County Monitoring Committee.

Annette M. Kovar, Nebraska Dept. of Environ. Quality, Lincoln, NE, for Dept. of Environ. Quality.

Leonard B. Levine, Los Angeles, CA, for US Ecology, Inc.

Patrick O'Brien, Butler, Galter Law Firm, Lincoln, NE, for Central Interstate Low-Level Radioactive Waste Com'n, Dept. of Environ. Quality.

Alan E. Peterson, Alan E. Peterson, Cline, Williams Law Firm, Lincoln, NE, Shawn D. Renner, Lincoln, NE, for Central Interstate Low-Level Radioactive Waste Com'n.

William B. Reynolds, Howrey, Simon Law Firm, Washington, DC, for David P. Schor, Jay Ringenberg, Randolph Wood.

Steven G. Seglin, Rocky C. Weber, Crosby, Guenzel LAw Firm, Lincoln, NE, for US Ecology.

Linda L. Willard, Atty. General's Office, Lincoln, NE, for Nebraska Dept. of Health.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

This opinion deals with the claims of Entergy & Wolf Creek and USE against the Commission. In another opinion issued today, I resolve the claims of the Commission against Nebraska.

In this decision, I find and conclude that the claims of Entergy & Wolf Creek and USE against the Commission should be denied. Pursuant to Federal Rule of Civil Procedure 52, I now set forth the findings

of fact and conclusions of law which inform my opinion.

## I. FACTS

To avoid another very long opinion, I assume a thorough understanding of this complex matter. Moreover, and because they are relevant to these issues, I now incorporate by reference in this decision the facts as I found them regarding the Commission's claims against Nebraska.

Pursuant to the Central Interstate Low–Level Radioactive Waste Compact[1] (Compact), the Commission contracted with USE to find, design, license, construct, and operate a low-level nuclear waste disposal facility. (Ex. 13.) The contract was very long, and quite complex. As a part of the agreement, USE was obligated to contribute "sweat equity" to the Commission. USE did so by discounting its bills to the Commission by the sum of $6,247,920.07. (Tr. 995; Ex. 1083 (spreadsheet).)

In order to fund most of the project, the Commission contracted with certain major generators of waste in the five-state compact area to provide the necessary funds. (Exs. 14, 15, 16 (amendments 1–7).) As with the USE contract, these contracts (which referred to the USE contract) were complex as well.

These generators were willing to provide the money because in return they would be able to use the waste disposal facility to dispose of low-level nuclear waste generated in their plants assuming the facility was licensed. Although they were not the only large generators to do so, Entergy & Wolf Creek were signatories to the contracts with the Commission. Each of the signatories to the contract agreed to pay the Commission a certain percentage of the funds necessary to complete the project for which the Commission had hired USE. The Entergy plaintiffs' share was slightly less than 54 percent (53.71%), and the Wolf Creek share was slightly more than 16 percent (16.23%). (Filing 463, Final Pretrial Order, at 5 ¶ 19.)

As a result, the Entergy plaintiffs claim they paid $47,576,000 to the Commission and Wolf Creek claims it paid $14,539,000 to the Commission.[2] The evidence reveals that $88,554,291.77 (Tr. 1017; Exs. 1083 (spreadsheet), 1533 (checks and wire transfers)) was paid to Nebraska or USE by the Commission in direct pursuit of a license. In any event, it is undisputed that most of those funds came to the Commission from the signatories to the funding agreements, specifically including Entergy & Wolf Creek. (Br. of Comm'n in Opp'n to Cross Claims, at 5 ("[T]he Commission recognizes that the money expended on this project has come mainly from the crossclaimants.").)

USE claims that the Commission breached two related provisions of the contract with USE. The first provision is as follows:

10.03 *Good Faith and Cooperation.* The Parties shall in good faith under-

1. *See* Omnibus Low–Level Radioactive Waste Interstate Compact Consent Act, Pub.L. No. 99–240, tit. II, § 222, 99 Stat. 1859, 1863–71 (1986) (reprinting the Compact). For ease of reference, the Compact is also reprinted in the appendix to the opinion issued today regarding the claims of the Commission against Nebraska.

2. These numbers are set forth in their brief without citation to the record. (Joint Post–Trial Br. of Entergy & Wolf Creek with Respect to Cross Claims, at 3.) I am uncertain how Entergy & Wolf Creek came up with these precise figures. My calculations-taking their percentage of contribution times the amounts paid to USE or Nebraska by the Commission in direct pursuit of the license-show that they would have paid slightly less than what they claim in their brief.

take to perform their respective duties and obligations under this Agreement promptly in accordance with the terms of this Agreement. Acknowledging that the nature of the development of the Facility is such that continued cooperation between the Parties will be required, each of the Parties hereby agrees to cooperate with the other to the extent reasonably necessary to enable the other to take such actions as are required of it. The Parties agree that at any reasonable time or place they shall meet and consult in good faith concerning their rights and obligations, and the terms and conditions of this Agreement.

(Ex. 13 at 61–62.)

The second provision reads like this:

10.04 *Further Assurances.* Each Party agrees to, and shall use all reasonable efforts to, provide such information, execute and deliver any instruments and documents and take such actions as may be necessary or reasonably requested or required by the other Party which are not inconsistent with the provisions of this Agreement, and which do not involve the assumption of obligations other than those provided for in this Agreement in order to give full effect to this Agreement and to carry out the intent of this Agreement.

(*Id.*)

As for Entergy & Wolf Creek, they rely upon one provision of their contract with the Commission. That provision reads as follows:

5. *Facility Development.* The Commission agrees to use its best efforts to carry out its obligations under the USE/Commission Contract and diligently to pursue implementation of the terms of such contract for siting, licensing, development, construction and oper-

ation of a Facility in accordance with the Compact and the Federal Act.

(Ex. 15 at 4–5.)

The testimony purporting to show a breach of these provisions came exclusively from John Etheridge. He was an Entergy employee. Mr. Etheridge gave the following reasons to support the breach-of-contract claims of Entergy & Wolf Creek and USE:

Q. Okay. And what I would like you to tell the Court and us is, essentially, what's the basis for your complaints against the Commission?

A. We have a contractual agreement with the Compact Commission. We entered into that contractual agreement in good faith. We held the Compact Commission responsible for the development of this project. We were relying on the Compact Commission's management and oversight on this project. I think we feel the Compact Commission basically did an adequate job, but there were a number of areas where they could have performed much more responsibly. One, I believe was in establishing a reasonable schedule and a reasonable budget, early on in the process. That schedule and budget to apply not only to the developer, but also to the State, a lot of money was going to the State as well, and in actuality, the state basically dictated the process. So we felt that the Commission should have been much more proactive in establishing the budget and schedule early on. Also we feel that the Compact Commission should have taken a much more aggressive stance resolving the conflicts with the Department of Health's involvement on this project. I believe that cost us a lot of time and money with the conflicts that arose through the Department of Health. And finally, in our mind, the Compact Commission is a partnership

among five states. They are all members, they all agreed to it, it was established by Congress, and we feel that Nebraska operated in bad faith, and as a partner to the Compact Commission, we feel that is reflective on the entire Compact and the entire Compact shares the blame for that.

(Tr. 3047–48.)

On cross examination, Mr. Etheridge admitted that the claimants' breach-of-contract case was not very strong. For example, he stated that: (1) a committee[3] including a representative from the generators approved the actions and expenditures of the Commission on a quarterly basis (Tr. 3054); (2) a committee including a representative of the generators reviewed USE's plans for development on a quarterly basis (Tr. 3054–55); (3) when the committee recommended that the Commission set a deadline for Nebraska to complete the project, the Commission agreed and acted to implement that deadline (Tr. 3056); (4) he recognized that USE challenged the jurisdiction of DOH in state court, but he did not know whether the Commission had approved that suit (Tr. 3059–60); and (5) there was no claim that Arkansas, Kansas, Louisiana, or Oklahoma had acted in bad faith (Tr. 3062).

In the opinion I issued today regarding the Commission's claim against Nebraska, I found that Nebraska violated the obligation of good faith explicitly imposed upon it by the Compact. In that regard, I awarded monetary damages, but no affirmative equitable relief.

To be specific, I awarded the Commission $151,408,240.37. That judgment was comprised of three categories of damages. The first category related to payments by the Commission to Nebraska or USE in direct pursuit of a license plus prejudgment interest. The second category relat-

ed to the loss of value to the Commission of the "sweat equity" contributed to the Commission by USE plus prejudgment interest. The third category of damages related to community improvement funds paid by the Commission to Nebraska political subdivisions plus prejudgment interest. As to this third category, the undisputed facts are that the funds for those payments came from Arkansas, Kansas, Louisiana, or Oklahoma, and not the generators or USE.

During the litigation against Nebraska which gives rise to the award in favor of the Commission and against Nebraska, Entergy & Wolf Creek and USE vigorously participated with their excellent lawyers. But, so did the Commission through its equally able counsel.

## II. LAW

Because the contracts require that the law of the "host state" should be applied (Ex. 13 at 71–72 ¶ 10.20; Ex. 15 at 18 ¶ 25), and the host state was Nebraska, the parties have assumed that Nebraska law applies. Except as otherwise indicated, I have assumed that their assumption is correct. With that in mind, we can turn to the claims.

Entergy & Wolf Creek and USE claim that the Commission breached its contracts with them. They also assert that even if no breach has been proven, I should impose a constructive or resulting trust on the Commission's monetary award against Nebraska. Lastly, they argue that I should award attorney fees in their favor and against the Commission under the "common fund" doctrine. I am not persuaded by any of these arguments.

### A. Breach of Contract

■ In order to prove a breach of contract under Nebraska law, at a minimum

---

3. The committee also included a representative from USE. (Tr. 3055.)

one must prove the following: (1) the parties entered into a contract; (2) the terms of the contract; (3) the defendant breached the contract in one or more of the ways alleged by the plaintiff; (4) the breach of contract was the proximate cause of some damage to the plaintiff; and (5) the nature and extent of. the damage. *See, e.g., Nebraska Jury Instructions,* Instruction 15.01 ¶ B, at 838–39 (West 2d ed.2001).

Entergy & Wolf Creek and USE assert essentially two theories of breach, and neither one has merit. I consider each theory in turn.

■ The first theory is that the Commission failed to act promptly and aggressively to remedy the misbehavior of Nebraska. The evidence, however, is quite to the contrary. Indeed, the Commission at all times acted diligently and properly, frequently consulting representatives of Entergy & Wolf Creek and USE about the proper course of conduct. That is, the Commission entirely complied with its "good faith," "further assurance," and "best efforts" duties under the contracts insofar as Nebraska's wrongdoing is concerned.

■ The second theory is that the Commission is responsible for the wrongs of Nebraska since Nebraska was a member of the Compact, and the Commission is a creature of the Compact. If so, the argument continues, then the Commission breached the contracts because Nebraska's behavior, attributable to the Commission on some agency theory, was entirely inconsistent with the "good faith," "further assurance," and "best efforts" provisions of the contracts.

Initially, the facts do not support the claimants' innovative theory. The evidence certainly does not show that the Commission in any way acquiesced in or agreed with the behavior of Nebraska. In fact, the Commission was frequently sued by Nebraska during the very time it is contended that the Commission was responsible for the behavior of Nebraska. Still further, there is no factual basis upon which to imply some sort of an agency relationship between Nebraska and the Commission.

Moreover, Entergy & Wolf Creek and USE have failed to present me with, and I have not found, any law that would make the Commission responsible for Nebraska's behavior. On the contrary, the federal law, as declared in the Compact, is that the Commission is independent of Nebraska, and that its duties and responsibilities under the Compact are separate and independent from those of Nebraska. Compare, for example, Article III of the Compact pertaining to the rights and obligations of the party states with Article IV of the Compact pertaining to the Commission. Therefore, there is no basis for holding the Commission responsible for Nebraska's actions under federal law.

In summary, the Commission has not breached its contracts with Entergy & Wolf Creek and USE.[4]

### B. Trusts

Even if they failed to prove a breach of contract, the claimants nevertheless assert that they are entitled to either a "constructive trust" or a "resulting trust" with respect to some or all of the monies repre-

---

**4.** This conclusion also defeats any claim for "equitable restitution" since that theory is premised upon the assumption that the Commission is either a "wrongdoer" itself or it is responsible for the acts of such a person. *See, e.g., Kerr v. Chas. F. Vatterott & Co.,* 184

F.3d 938, 944 (8th Cir.1999) (equitable restitution "focuses on the defendant's wrongfully obtained gain . . . [it] seeks to punish the wrongdoer by taking his ill-gotten gains, thus removing his incentive to perform the wrongful act again.").

sented by the Commission's judgment against Nebraska. I disagree.

■■■ Under Nebraska law, a "resulting trust" arises by implication, on the assumption that the parties intended that a trust would exist although they did not express their intent to create one, while a "constructive trust" arises when one has acquired legal title to property under such circumstances that in good conscience he or she may not retain the beneficial interest in the property. *See, e.g., Wait v. Cornette,* 259 Neb. 850, 855–56, 612 N.W.2d 905, 910–11 (2000) (defining the doctrines and collecting cases). Under Nebraska law, the imposition of a constructive trust or a resulting trust is an equitable action. *Brtek v. Cihal,* 245 Neb. 756, 760, 515 N.W.2d 628, 633 (1994). A court of equity in Nebraska will seldom interfere with the public duties of a governmental agency, and, in any event, a showing must be made that it is necessary to do so. *Leeman v. Vocelka,* 149 Neb. 702, 709–10, 32 N.W.2d 274, 279 (1948) (a court of equity has no jurisdiction to interfere with the public duties of a department of government, except under special circumstances and where necessary for protection of the rights of property).

The difficulty with both of these trust theories is that they are premature and not ripe. That is, the theories cannot be applied in the abstract, and that would be the result should I endeavor to apply those theories to this case given its present posture.

The Commission has not received the monies from the judgment. Therefore, the Commission has yet to determine what obligations, if any, it has to Entergy & Wolf Creek and USE under the contracts with regard to any money it will receive as a result of the judgment. To be specific, the Commission has not done anything with the monies that is either inconsistent with the transactions between the parties (a resulting trust) or that is inequitable or unconscionable (a constructive trust). Nor has the Commission threatened any such action. Realizing that the contracts in this case are complex, and not obviously contingent upon pursuit of a specific license, one cannot determine whether a trust should be imposed until the Commission decides what to do with the money.

It is quite possible that the Commission will read the contracts in a way which obviates any need for a trust. In any event, the Commission cannot fairly be expected to make that decision until it has had a reasonable time after this case has become final to consider the complex questions inherent in this very unique circumstance. Given the fact that the Commission is a creature of federal law charged with very important federal duties, I should not presuppose that the Commission will make a decision inconsistent with its legal and equitable obligations, contractual or otherwise.[5]

Therefore, I shall deny the request of Entergy & Wolf Creek and USE for the imposition of a trust upon the monies represented by the Commission's judgment against Nebraska.

### C. Common Fund

Entergy & Wolf Creek assert the right to recover attorney fees under the so-called "common fund" doctrine. Whether I apply the doctrine as it is understood under federal common law (as I think most appropriate) or under Nebraska law (as I

---

5. In fact, after hearing the testimony of the former Chairman of the Commission, Mr. James O'Connell, who has experience as a practicing lawyer, a pharmacist, chief executive officer of a large hospital, and former Secretary of Health and Environment for the State of Kansas, and who remains a member of the Commission, I have every confidence that the Commission will endeavor to act fairly and equitably. (Tr. 3681–91, 3790–3902.)

think less appropriate), the claim must be denied.

■■■■ The federal "common fund" doctrine is a variant of the axiom that equity will not allow "unjust enrichment." Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation* 50–51 (1994) [hereinafter *Awarding Attorneys' Fees*]. The doctrine provides that a court "may award fees from a common fund where a suit produces a recovery for persons other than the litigant." *Id.* at 49, 32 N.W.2d 274. The "common fund" doctrine exists independently of the various fee-shifting statutes. *Id.*

The "common fund" doctrine is a part of the "historic equity jurisdiction of the federal courts." *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 164, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (when a litigant on his own behalf and at his own expense has imposed a lien on earmarked funds in an insolvent bank and by so doing has incidentally benefitted others who are not parties to the suit, allowance of counsel fees and related expenses to be paid out of the earmarked funds may be authorized by a federal court). *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").

■■■■ In order to prevail on a "common fund" theory of recovery under federal law, there must be some type of causal connection between the litigation and a beneficiary's enjoyment of the fund; that is, the lawsuit must: (1) bring the fund about; (2) enhance the fund; or (3) create access to it. *Awarding Attorneys' Fees* at 53–54. In addition, an award under the common fund doctrine is generally unwarranted where the other beneficiaries of the claimant's suit had interests adverse to those of the claimant, or where the other

beneficiaries to the fund were represented by counsel and did not take a " 'free ride' " on the work of the other lawyer. *Id.* at 61–63 (footnotes and citations omitted).

■■■■ In this case, the legal actions of Entergy & Wolf Creek and USE did not bring the Commission's recovery about, enhance that recovery, or create access to it. On the contrary, the Commission would have prevailed had Entergy & Wolf Creek and USE not been parties to the litigation. Still further, the interests of the Commission were at least partially adverse (as shown by these very cross claims) to the interests of Entergy & Wolf Creek and USE. Finally, the Commission did not take a "free ride." Indeed, the opposite is true and the Commission vigorously pursued its own interests with its own counsel. For all of these reasons, the federal notion of the "common fund" doctrine does not support the claimants.

■■■■ The claimants fare no better under Nebraska law. In particular, "[t]he common fund doctrine is not applicable where the party sought to be charged has employed his or her own attorney, such attorney has *actively* participated in litigation, and such counsel has not terminated, abandoned, or acquiesced in the representation of his or her client by other counsel." *In re Estate of Stull,* 8 Neb.App. 301, 307, 593 N.W.2d 18, 23 (1999) (citation omitted; emphasis in original). *See also United States v. Olson,* 4 F.3d 562, 566–7 (8th Cir.1993) (denying common fund claim under Nebraska law). Since the Commission was represented by aggressive counsel, who fully participated in, and entirely controlled, the Commission's successful litigation, Entergy & WolfCreek and USE are not entitled to recover under the Nebraska variant of the "common fund" doctrine.

In summary, the "common fund" doctrine is limited by the principle that "such

allowances are appropriate only in exceptional cases and for dominating reasons of justice." *Sprague,* 307 U.S. at 167, 59 S.Ct. 777. That is not the case here.

### III. CONCLUSION

Entergy & WolfCreek and USE did not prove a breach of contract. This is not a proper case for the imposition of a resulting or a constructive trust. The "common fund" doctrine does not apply. Accordingly,

IT IS ORDERED that a judgment in conformity with this memorandum shall be entered today by separate document.