# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-3191

_____

Robert McKeage; Janet McKeage, on behalf of themselves and all others similarly
situated

*Plaintiffs - Appellees*

v.

TMBC, LLC

*Defendant - Appellant*

Tracker Marine Retail, LLC; Bass Pro Outdoor World, LLC

*Defendant*s

_____

No. 15-3286

_____

Robert McKeage; Janet McKeage, on behalf of themselves and all others similarly
situated

*Plaintiffs - Appellants*

v.

TMBC, LLC

*Defendant - Appellee*

Tracker Marine Retail, LLC; Bass Pro Outdoor World, LLC

*Defendant*s

———————

Appeals from United States District Court
for the Western District of Missouri - Springfield

———————

Submitted: September 22, 2016
Filed: February 13, 2017
[Published]

———————

Before WOLLMAN, BRIGHT,[1] and KELLY, Circuit Judges.

———————

PER CURIAM.

Robert and Janet McKeage brought this class action lawsuit to challenge TMBC's[2] nationwide practice of charging a document fee when selling boats and trailers under form contracts governed by Missouri law. After approving class certification, the district court determined that TMBC prepared legal documents attendant to its sales and that charging a fee for those documents constituted unauthorized law business in violation of Mo. Rev. Stat. §§ 484.010 and 484.020. The district court granted summary judgment in favor of the class and awarded treble

———————

[1]The Honorable Myron H. Bright died on December 12, 2016. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E. It incorporates in large part the views expressed by Judge Bright during the pendency of this case.

[2]TMBC, LLC's parent company is Tracker Marine Retail, LLC. Tracker Marine Retail, LLC's parent company is Bass Pro Group, LLC.

damages in the amount of $21,735,754. The district court also awarded attorneys' fees to class counsel in the amount of $2,425,359, to be paid out of the common fund.

TMBC filed an appeal challenging the class certification, grant of summary judgment, and application of Missouri law to sales that occurred outside Missouri. The McKeages filed a cross appeal to enforce the fee-shifting provision in TMBC's contract and to challenge the district court's calculation of fees based on the amount of untrebled damages rather than the entire common fund. We affirm the district court on the main appeal. We reverse and remand for further proceedings on the cross appeal.

I

TMBC is a corporation headquartered in Springfield, Missouri. It sells boats and trailers through dealerships across the nation, most of which are located within Bass Pro Shops.[3] On May 23, 2008, Robert and Janet McKeage purchased a boat from TMBC at the Tracker Boat Center located inside the Bass Pro Shop in St. Charles, Missouri. The purchase was memorialized in a standard form contract TMBC has used since 2007, which has a choice-of-law provision that states, in relevant part:

> GOVERNING LAW. THE PARTIES AGREE THAT THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF MISSOURI. The venue for any action or proceeding arising from this Agreement . . . shall be in Greene County, Missouri. The prevailing party in any such action or proceeding shall be entitled to recover all litigation costs and expenses, including reasonable attorneys' fees at all levels of litigation . . . .

---

[3] As of 2008, TMBC operated seventy-three dealerships nationwide. Fifty-two of those dealerships were located within Bass Pro Shops, and twenty-one were freestanding dealerships.

As part of the contract, TMBC charged the McKeages a $75 "document fee." TMBC charged the fee to cover the cost of preparing and/or completing documents such as the form contract itself (sometimes referred to by the parties as the Order Acknowledgment and Agreement of Sale, or OAAS form); a bill of sale; a power of attorney form; and title, license, and registration documents.

Unhappy with their purchase, the McKeages contacted an attorney to help them rescind the sale. After reviewing the contract, counsel for the McKeages filed suit against TMBC in the Circuit Court for St. Charles County, Missouri. Among other things, the McKeages alleged that TMBC's practice of charging a document fee constituted unauthorized law business in violation of Mo. Rev. Stat. §§ 484.010 and 484.020.[4] Pursuant to the contract's choice-of-law provision, venue was thereafter transferred to Greene County, Missouri.

---

[4]Section 484.010 states in relevant part:

The "law business" is hereby defined to be and is the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights . . . .

Section 484.020 states in relevant part:

No person shall engage in the practice of law or do law business . . . unless he shall have been duly licensed therefor and while his license therefor is in full force and effect . . . . Any person, association, partnership, limited liability company or corporation who shall violate the foregoing prohibition of this section . . . shall be subject to be sued for treble the amount which shall have been paid him or it for any service rendered in violation hereof by the person, firm, association, partnership, limited liability company or corporation . . . .

The McKeages asked the state court to certify a nationwide class action. The state court certified a class, but limited it to customers whose purchases occurred in Missouri. The McKeages sought review from the Missouri Supreme Court, contending that the district court should have certified a nationwide class. The Missouri Supreme Court agreed, noting that TMBC chose Missouri law for the standardized form contracts it used nationwide. State ex rel. McKeage v. Cordonnier, 357 S.W.3d 597, 601 (Mo. banc 2012). Pursuant to the Missouri Supreme Court's decision, the state trial court then certified a nationwide class.

In March 2012, TMBC removed the action to federal district court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(8). After removal, TMBC brought a motion to decertify the class. Extensive litigation followed over whether a class action was appropriate, and eventually the district court denied the motion to decertify. After TMBC unsuccessfully petitioned this court for permission to appeal the denial of its motion to decertify the class, TMBC asked the district court to reconsider. Ultimately, the district court required the McKeages' counsel to hire reviewers to manually inspect each of TMBC's customer files in order to determine which contracts contained a Missouri choice-of-law provision, the inclusion of which formed the basis for the nationwide class. After the document review, the class was determined to consist of approximately 100,000 members.

The parties filed cross motions for summary judgment. As relevant to the issues now on appeal, TMBC argued that charging a document fee did not amount to unauthorized law business because TMBC's employees did not exercise legal judgment when filling out documents for customers. TMBC also argued that some individuals had been improperly identified as customers who signed contracts governed by Missouri law. TMBC further argued that Missouri law should not be applied nationwide to customers who signed contracts with TMBC outside Missouri. Finally, TMBC argued that damages should not be calculated based on the entire

-5-

document fee because portions of the fee went to services that did not constitute unauthorized law business.

The district court rejected TMBC's arguments and granted the McKeages' motion for summary judgment. The district court determined that the class members were properly identified, TMBC's conduct in charging a document fee constituted unauthorized law business, Missouri law applied to transactions that occurred outside Missouri, and damages should be awarded based on the entire document fee. The district court then awarded treble damages pursuant to Mo. Rev. Stat. § 484.020. Based on the number of members in the class, the amount of damages was calculated at $21,735,754.

After the district court's grant of summary judgment, the McKeages filed a motion for attorneys' fees. Although the parties' contract provided that "[t]he prevailing party in any [action or proceeding arising from the agreement] shall be entitled to recover . . . reasonable attorneys' fees at all levels of litigation," the district court determined that "even in cases where a fee shifting provision may be applicable, attorney's fees should come from the common fund." The district court used the percentage-of-the-benefit method to calculate the fees and determined that thirty-three percent was appropriate in this case. Finally, the district court noted that the common fund included $7,349,574 in actual damages and $14,386,180 in statutory interest and treble damages. Based on a trilogy of Eighth Circuit cases involving treble damages under Section 4 of the Clayton Act—Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 194 F.2d 846 (8th Cir. 1952); International Travel Arrangers, Inc. v. Western Airlines, Inc., 623 F.2d 1255 (8th Cir. 1980); and Rose Confections, Inc. v. Ambrosia Chocolate Co., 816 F.2d 381 (8th Cir. 1987)—the district court concluded that calculating the fee award "from the actual damages [rather than treble damages] . . . is preferable because it better reflects the policies behind a common fund recovery[.]" As a result, the district court awarded class counsel $2,425,359.42 in

attorneys' fees to be paid from the common fund, representing thirty-three percent of the untrebled damages.

TMBC timely appealed, contending: (1) the class should not have been certified because individualized proof was required to determine whether each customer's contract contained a Missouri choice-of-law provision; (2) the district court misinterpreted Missouri case law regarding unauthorized law business in granting summary judgment to the class; and (3) the district court erred in applying Missouri law to conduct which occurred outside Missouri. The McKeages filed a timely cross appeal contending that the district court should have enforced the fee-shifting provision in TMBC's standard form contract and that the fee award should have been based on the entire common fund rather than the untrebled damages.

II

A

TMBC first contends that the district court erred when it certified a class. We review the district court's decision to certify a class for an abuse of discretion, but review de novo any issues of law involved in the class certification. In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005).

TMBC argues that the McKeages failed to satisfy the commonality and predominance requirements of Federal Rules of Civil Procedure 23(a)(2) and (b)(3). See Fed. R. Civ. P. 23(a)(2) (setting forth the prerequisite to class certification that there be "questions of law or fact common to the class"); Fed. R. Civ. P. 23(b)(3) (setting forth an additional requirement that there be "questions of law or fact common to class members [that] predominate over any questions affecting only individual members"). More specifically, TMBC argues individual issues

predominated over common issues during the highly individualized process the district court used to identify class members.

TMBC's complaints about an individualized inquiry relate to both the identification of the class members and the evidence necessary to establish liability once a class has been identified. TMBC's argument thus implicates not only the commonality and predominance requirements, but also Rule 23's implicit requirement that a class "'must be adequately defined and clearly ascertainable.'" Sandusky Wellness Ctr. v. Medtox Sci., Inc., 821 F.3d 992, 996 (8th Cir. 2016) (quoting Ihrke v. N. States Power Co., 459 F.2d 566, 573 n.3 (8th Cir.), vacated as moot, 409 U.S. 815 (1972)). Though ascertainability is an implicit requirement that our court enforces through "a rigorous analysis of the Rule 23 requirements," id., a dispute regarding the method for identifying class members calls for an independent discussion of whether a class is ascertainable.

A class may be ascertainable when its members may be identified by reference to objective criteria. See id. at 997–98. In Sandusky, the plaintiffs alleged Medtox Scientific violated the Telephone Consumer Protection Act (TCPA) by sending unsolicited faxes without the opt-out notice required by the TCPA. We identified the "fax logs showing the numbers that received each fax" as "objective criteria that make the recipient clearly ascertainable." Id. at 997. We concluded that the district court abused its discretion by denying class certification, despite the fact that the logs may have identified some fax recipients "who don't have rights under the [TCPA]," noting that those class members "just wouldn't be entitled to share in the damages awarded to the class by a judgment or settlement." Id. at 998 (alteration in original) (quoting Chapman v. Wagener Equities, Inc., 747 F.3d 489, 492 (7th Cir. 2014)).

Here, class members were identified by reviewing TMBC's customer files according to objective criteria. The purpose of the review process was to identify for class membership the customers whose files contained an OAAS form or a terms-and-

conditions sheet with a Missouri choice-of-law provision. The district court adopted an intensive file-by-file review process specifically for the purpose of excluding customers whose contracts did not contain the Missouri choice-of-law provision and who therefore did not have rights under Missouri law. Indeed, our examination of the record indicates that review process worked, and that most[5] customers who may have been subject to TMBC's individual defenses were excluded from the class during the review process.

In addition to the class being clearly ascertainable, the commonality and predominance requirements of Rule 23(b) are satisfied here. The class identified as a result of the intensive file-by-file review included TMBC customers that entered into a contract identical or substantially similar to the one entered into by the McKeages. In addition, evidence gleaned during discovery showed that it was TMBC's corporate policy to require all customers to sign the standard form contract governed by Missouri law. Thus, this case presented a "classic case for treatment as a class action." Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (internal quotation omitted); see also Flanagan v. Allstate Ins. Co., 242 F.R.D. 421, 428 (N.D. Ill. 2007) ("Claims arising out of form contracts are particularly appropriate for class action treatment."); Egge v. Healthspan Servs. Co., 208 F.R.D 265, 269 (D. Minn. 2002) ("Claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action.") (alteration omitted) (quoting Kleiner v. First Nat'l Bank of Atlanta, 97 F.R.D. 683, 692 (N.D. Ga. 1983)). As to the class members eventually identified, the common and predominant issue was whether TMBC's practice of charging a document fee in the standardized contract violated Missouri's prohibition on unauthorized law business. Although the

---

[5]The district court denied summary judgment as to 2,293 individuals who were initially included in the class after finding there was a genuine issue of material fact as to whether the transactions of 68 of those individuals were governed by Missouri law, and whether 2,225 of those individuals whose transactions were governed by Missouri law had actually paid a document fee.

documents TMBC prepared for individual customers varied at times, the district court correctly determined that the variety of services and the differences between contracts were not distinct enough to decertify the case as a class action. See Janson v. LegalZoom.com, Inc., 271 F.R.D. 506, 510, 512 (W.D. Mo. 2010) (involving a claim of unauthorized law business and finding that Rule 23's commonality and predominance requirements were met even when the defendant offered more than 200 separate legal forms, noting that variation in forms did not negate the overarching common legal question of "whether LegalZoom's preparation of legal documents violates Missouri law").

We conclude that the district court did not abuse its discretion in finding that the class as ultimately defined met the requirements of Rule 23 and certifying the case as a class action.

B

TMBC next contends that the district court erred in granting summary judgment to the class. We review the district court's grant of summary judgment de novo. Green v. Dillard's, Inc., 483 F.3d 533, 538 (8th Cir. 2007).

TMBC contends that the district court misconstrued Missouri law when it concluded that TMBC's practice of charging a document fee constituted unauthorized law business under Mo. Rev. Stat. §§ 484.020 and 484.010. TMBC contends that the district court misunderstood that "an activity must first be the practice of law before charging for its performance by a non-lawyer can be unauthorized."

Under Missouri law, "charging a separate fee for the completion of legal forms by non-lawyers constitutes the unauthorized practice of law business." Carpenter v. Countrywide Home Loans, Inc., 250 S.W.3d 697, 702 (Mo. banc 2008). Determining whether a particular form is legal in nature requires the court to "balance the

protection of the public against a desire to avoid unnecessary inconvenience and expense." Hargis v. JLB Corp., 357 S.W.3d 574, 584 (Mo. banc 2011) (quoting In re First Escrow, Inc., 840 S.W.2d 839, 843 (Mo. banc 1992)). A key factor in this inquiry is the legal judgment or discretion required to prepare the form. See Hargis, 357 S.W.3d at 584; In re First Escrow, Inc., 840 S.W.2d at 843; Hulse v. Criger, 247 S.W.2d 855, 861 (Mo. banc 1952). However, once it has been determined that a particular document is legal in nature, the act of charging a fee for the preparation or completion of that document constitutes unauthorized law business, even when a non-lawyer does not exercise any legal judgment in completing the form.

For example, in Eisel v. Midwest BankCentre, 230 S.W.3d 335 (Mo. banc 2007), bank employees prepared a number of pre-printed documents when processing mortgage loans. The pre-printed forms included, among other things, a deed of trust and a promissory note. Id. at 337 n.3. The Missouri Supreme Court had previously determined that deeds of trust and promissory notes were legal documents because their preparation requires the exercise of legal judgment or discretion. See id. (citing In re First Escrow, 840 S.W.2d at 846). As a result, the court found it unnecessary to consider whether bank employees' completing the pre-printed forms required the exercise of legal judgment or discretion. Rather, the court held the bank's practice of charging a fee for completing the pre-printed forms was unauthorized law business prohibited by § 484.020, explaining that "charging of a separate additional charge tends to place emphasis on conveyancing and legal drafting as a business rather than on the business of being a [banker]." Id. at 339.

The forms for which TMBC charged a fee included forms Missouri has determined to be legal documents—namely, power of attorney forms—as well as forms that have yet to be analyzed under Missouri law. See id. (companies and their non-lawyer agents prohibited "from drawing, preparing, or assisting in the preparation of trust workbooks, trusts, wills, and powers of attorney for valuable consideration") (citing In re Mid-Am. Living Trust Assocs., Inc., 927 S.W.2d 855,

-11-

871 (Mo. banc 1996)). As a consequence, TMBC's practice of charging a separate fee for the completion of those forms was unauthorized law business under § 484.020 whether or not the act of completing the forms required the exercise of legal judgment or discretion. See id.

Relying on Bray v. Brooks, 41 S.W.3d 7 (Mo. Ct. App. 2001), TMBC further contends the district court misconstrued Missouri law when it calculated damages based upon the entire document fee, because some of the forms for which it charged a document fee were not legal documents. TMBC contends that the district court was required to parse the document fee to determine what portion should be allotted to the preparation of legal documents and to calculate damages only upon that amount. However, Bray does not mandate such a procedure. Bray involved a real estate broker who charged a single fee for all of his services, which included the unauthorized drafting of a number of legal documents as well as legitimate broker services, without making a defined separate charge for document preparation. In deciding whether damages for the violation of § 484.020 should be based upon the broker's entire fee, the Missouri Court of Appeals said a distinction must be made between the legitimate and unauthorized services the broker provided. Id. at 14.

As the district court correctly determined, the facts of Bray differ from those involved here. TMBC did not charge the McKeages a single contract price for the sale of the boat. Rather, the unauthorized fee for document preparation was charged separately from the legitimate portions of the contract. Thus, there was no need to address the dilemma the court faced in Bray. In situations where the unauthorized charge is separate from the legitimate portions of the parties' transaction, damages may be based upon the entire unauthorized fee, even if some of the documents are not legal in nature. See Eisel, 230 S.W.3d at 337 n.3.

Finally, TMBC contends it had no notice that the choice-of-law clause in its contract would subject it to treble damages. We disagree. See Carpenter, 250 S.W.3d

-12-

at 702 ("Countrywide had clear and fair notice, both by statute and case law, that its activities constituted the unauthorized practice of law business and that this conduct would subject it to treble the amount of fees paid in exchange for those services."); Janson v. LegalZoom, Inc., 802 F. Supp. 2d 1053, 1067 (W.D. Mo. 2011) (finding application of Missouri's unauthorized practice of law statute did not violate the defendant's constitutional due process rights where Missouri "cases such as Hulse, First Escrow, Mid-America, and Eisel put [the defendant] on notice that it could not charge a fee for the preparation of legal documents").

We conclude that the district court did not err in granting the class members' motion for summary judgment or in calculating damages based upon the entire document fee.

C

Finally, TMBC contends the district court erred in applying Missouri law to sales that occurred outside Missouri. This issue involves the interpretation and application of the choice-of-law provision in TMBC's standard form contract, and thus is an issue of law reviewed de novo. See Schwan's Sales Enters., Inc. v. SIG Pack, Inc., 476 F.3d 594, 595–96 (8th Cir. 2007).

TMBC characterizes this issue as an unconstitutional extra-territorial application of Missouri penal law, arguing that "[t]o allow Missouri to control the regulation of law licenses and decide what constitutes the practice of law in other states is unprecedented" and violative of the Commerce and Full Faith and Credit Clauses of the United States Constitution. In making this argument, TMBC relies on the fact that § 484.020(2) makes it a misdemeanor to engage in unauthorized law business and that the Missouri attorney general has the right to sue for treble damages in the event the parties granted a private cause of action under the statute "neglect and fail to sue for or recover such treble amount." Mo. Rev. Stat. § 484.020(2).

-13-

The fundamental flaw in TMBC's argument is that Missouri is not a party to this action. Missouri has not charged TMBC with any crimes, nor has the Missouri attorney general pursued an action against TMBC for treble damages arising out of its contracts with class members. Missouri makes no attempt to enforce its law extra-territorially. Thus, whether Missouri can control the regulation of law licenses extra-territorially and whether the Missouri attorney general can enforce § 484.020 extra-territorially are issues not before us.

Instead, the question here is whether a corporation headquartered in Missouri can choose that Missouri law govern its conduct in standard form contracts it used nationwide. There is nothing inherently unconstitutional about enforcing a corporation's choice to have its contractual duties governed by the law of a particular state. On the contrary, "[t]he general rule is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 356 (1931); State ex rel. McKeage, 357 S.W.3d at 600 ("Generally, parties may choose the state whose law will govern the interpretation of their contractual rights and duties. A valid choice of law provision in a contract binds the parties." (internal citation omitted)). Aside from its argument that application of § 484.020 in this case constitutes the unconstitutional extra-territorial application of Missouri penal law, TMBC does not otherwise challenge the validity or enforcability of the choice-of-law clause. We thus conclude that the district court did not err in applying Missouri law to sales that occurred outside Missouri.

D

In their cross appeal, the McKeages challenge the district court's award of attorneys' fees. We review the district court's award of attorneys' fees for an abuse of discretion, but review de novo any rulings of law related to the award of fees. Roemmich v. Eagle Eye Dev., LLC, 526 F.3d 343, 354–55 (8th Cir. 2008).

We first address the McKeages' contention that the district court erred when it held that the attorneys' fees should be paid from the common fund rather than paid by TMBC pursuant to the contractual fee-shifting provision.[6]  In concluding that attorneys' fees should be paid by the class members out of the common fund even though there was a fee-shifting provision in TMBC's contract, the district court cited three cases:  Entergy Arkansas, Inc. v. Nebraska, 226 F. Supp. 2d 1174 (D. Neb. 2002);  In re Workers' Compensation Insurance Antitrust Litigation, 771 F. Supp. 284 (D. Minn. 1991); and In re Chrysler Motors Corp. Overnight Evaluation Program Litigation, 736 F. Supp. 1007 (E.D. Mo. 1990).  However, none of these cases involved a common fund in a class action in which a contractual fee-shifting provision played a part.  See Entergy Ark., 226 F. Supp. 2d at 1182 (noting the common fund doctrine exists "independently of the various fee-shifting statutes," and not addressing whether the presence of a common fund necessarily precludes the enforcement of a contractual fee-shifting provision); In re Workers' Comp., 771 F. Supp. at 286 (honoring class counsel's request that fees be paid out of common fund rather than under applicable statutory fee-shifting provisions because "the settlement agreements contain an explicit term creating a common fund"); In re Chrysler Motors Corp., 736 F. Supp. at 1012–13 (discussing other cases initiated pursuant to

---

[6]We reject TMBC's contention, articulated in its reply brief, that the contractual fee-shifting provision does not apply because this suit is not an action or proceeding arising from its agreements.  The $75 document fee was part of the contracts, this class action was brought to challenge the lawfulness of that part of the contracts—a determination that relates to the interpretation of the contract—and thus this class action arises from those agreements and triggers the fee-shifting provision. See Major v. McCallister, 302 S.W.3d 227, 231–32 (Mo. Ct. App. 2009) ("Generally speaking, whether a forum selection clause that by its terms applies to contract actions also reaches non-contract claims 'depends on whether the resolution of the claims relates to interpretation of the contract.'" (quoting Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988)).

fee-shifting statutes in which common fund principles were applied to determine fees). These cases, while informative, are not dispositive.

The question here is whether, in a case in which both a common fund and a *contractual* fee-shifting provision exist, attorneys' fees should be awarded from the common fund or paid under the contract's terms. Our court has yet to address this question. In deciding this issue, we first note that the presence of a fee-shifting *statute* does not necessarily preclude awarding attorneys' fees out of a common fund. See 5 William B. Rubenstein, Newberg on Class Actions § 15:61 (5th ed. 2016) ("[C]ounsel may in some cases be able to seek both statutory fee-shifting and common fund fee-spreading."). Instead, the presence of a fee-shifting statute precludes a common fund award only when that result is required by the statutory scheme involved. See Alan Hirsch et al., Fed. Judicial Ctr., Awarding Attorneys' Fees and Managing Fee Litig., 78 & n.447 (3d ed. 2015) ("The Second, Third, and Seventh Circuits have held that, absent . . . a showing of legislative intent [to preclude a common fund award], the fact that a fee-shifting statute applies to a particular case does not preclude recovery from a common fund.") (citing Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1327 (2d Cir. 1990); Skelton v. Gen. Motors Corp., 860 F.2d 250, 255 (7th Cir. 1988); In re Fine Paper Antitrust Litig., 751 F.2d 562, 583 (3d Cir. 1984)); see also Haggart v. Woodley, 809 F.3d 1336, 1357 (Fed. Cir.), cert. denied, 136 S. Ct. 2509 (2016) (holding that fee-shifting provision under section 304(c) of the Uniform Relocation Assistance and Real Property Acquisition Policies Act precluded a common fund award because the statutory scheme "expressly allows landowners to retain the full compensation of the value of their property by mandating the Government to assume the litigation expenses of counsel"). But when a particular statutory scheme does not manifest congressional intent to preclude equitable fee-shifting under the common fund doctrine, courts are afforded greater discretion in determining the appropriate source of attorneys' fees. See Haggart, 809 F.3d at 1359 ("We do not foreclose the application of the common fund doctrine in *all* instances in which a fee-shifting statute is present. Equity may sometimes deem

it appropriate to give counsel a piece of either the final judgment or settlement agreement.").

In cases involving *contractual* fee-shifting provisions, there is no relevant underlying congressional intent that might preclude a common fund award. Instead, the court must weigh the equitable principles underlying the creation of the common fund doctrine against the fee-shifting provision agreed upon by the parties. See Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (explaining that the common fund doctrine is grounded in equity).

There is a distinction between the amount a losing party may be required to pay under an agreed-upon contractual fee-shifting provision and the amount a class member should equitably be required to pay his or her own lawyer under the common fund doctrine. Cf. Gisbrecht v. Barnhart, 535 U.S. 789, 806 (2002) (emphasizing that the lodestar method of awarding fees under a fee-shifting provision "was designed to govern imposition of fees on the losing party . . . . [but] nothing prevents the attorney for the prevailing party from gaining additional fees, pursuant to contract, from his own client." (citation omitted)); Venegas v. Mitchell, 495 U.S. 82, 90 (1990) (explaining that the relevant statutory fee-shifting provision "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer"). In Nilsen v. York County, the court discussed Venegas and Gisbrecht in the context of a class action common fund case and concluded that "[t]hese cases, read together, uncouple the fee analysis in determining an award *against* the losing defendant . . . from the fee analysis for determining an award *to* the lawyer from the amount that he or she has recovered." 400 F. Supp. 2d 266, 272 (D. Me. 2005).

"The fact that a common fund has been created is not sufficient to establish a finding that the common fund doctrine must be applied when awarding attorney fees . . . ." Haggart, 809 F.3d at 1356. The common fund doctrine is intended to ensure that class counsel receives a fee similar to what would have been received had

-17-

a retainer agreement been in place with all class members, as well as to prevent "persons who obtain the benefit of a lawsuit without contributing to its cost"—e.g., passive class members—from being "unjustly enriched at the successful litigant's expense." Boeing Co., 444 U.S. at 478. Payment of attorneys' fees under the fee-shifting provision accommodates both concerns underlying the common fund doctrine: First, lawyers are able to recoup reasonable compensation. Second, there is no risk that named plaintiffs alone will be required to pay the class's lawyers, thereby unjustly enriching passive class members by providing them the benefit of a portion of the award without the burden of litigation costs. Furthermore, the McKeages' counsel successfully obtained a judgment on behalf of the class against a defendant who freely entered into a contract containing a fee-shifting provision. Requiring the class to pay the entire attorneys' fee award from the common fund in this case is inequitable because it nullifies the class's contractual right, as the prevailing party, "to recover all litigation costs and expenses, including reasonable attorneys' fees at all levels of litigation" from its opponent. Enforcement of the fee-shifting provision honors both the contract and the principles underlying the common fund doctrine.

However, should the district court determine that counsel for the class is entitled to additional fees from the common fund, apart from those reasonable expenses covered by the fee-shifting provision, it is not prohibited from awarding additional fees. See Nilsen, 400 F. Supp. 2d at 272–73 (fee analysis for determining an award against the losing defendant is distinct from the fee analysis for determining an award to the lawyer from the amount that a plaintiff has recovered). We make no comment with respect to whether fees beyond those resulting from the contractual fee-shifting provision should be awarded in this case, and we leave that determination to the district court's sound discretion. Should it determine that an additional award out of the common fund is justified in this case, the district court should look to "the fund as a whole," including the trebled damages, Boeing Co., 444 U.S. at 478, but is free to award any portion of the fund that it deems appropriate.

## III

For the reasons stated, we affirm on all issues raised in the primary appeal. We reverse and remand for further proceedings consistent with this opinion on the issues raised in the cross appeal.

_____